OFFICE OF THE PEOPLE'S COUNSEL OF the DISTRICT OF COLUMBIA, Petitioner,

v.

PUBLIC SERVICE COMMISSION OF the DISTRICT OF COLUMBIA, Respondent.

Potomac Electric Power Company, Intervenor.

No. 92–AA–1247.

District of Columbia Court of Appeals.

Argued March 23, 1993.
Decided Aug. 23, 1993.

---

Elizabeth A. Noël, People's Counsel, with whom Sandra Mattavous–Frye, Associate People's Counsel, and Karen R. Sistrunk, Asst. People's Counsel, Washington, DC, were on the brief, for petitioner.

Daryl L. Avery, Gen. Counsel, with whom Edwin A. Huddleson III, Washington, DC, was on the brief, for respondent.

Paul H. Harrington, with whom Kirk J. Emge, Washington, DC, was on the brief, for intervenor.

Before ROGERS, Chief Judge, and FERREN, Associate Judge, and KERN, Senior Judge.

FERREN, Associate Judge:

The Office of People's Counsel (OPC) seeks reversal of a final order of the Public Service Commission of the District of Columbia (PSC) issued in Formal Case No. 912. Order No. 10044, issued on June 26, 1992, authorized intervenor, Potomac Electric Power Company (PEPCO), to increase its rates. OPC and the District of Columbia government filed applications for reconsideration of this order, which the PSC denied in Order No. 10080, issued on August 20, 1992. In this court, OPC contends that the PSC, in issuing Order No. 10044, did not properly include the Advisory Neighborhood Commissions (ANCs) in its ratemaking process, as mandated by D.C.Code § 1–261 (1992 Repl. & 1993 Supp.). OPC also contends that the PSC failed to comply with the statutory mandate of § 1–261(d), directing the PSC to give "great weight" to the advice it actually received from ANCs and from individual Advisory Neighborhood Commissioners (ANC Commissioners). We affirm.

## I.

On December 5, 1991, PEPCO submitted an application to the PSC, requesting an annual retail rate increase of $54,090,000. The PSC convened a prehearing conference on January 3, 1992, to clarify the issues. On January 15, 1992, the PSC issued Order No. 9921, designating 33 issues for review and establishing a procedural schedule. In accordance with this schedule, the parties, including various intervenors, submitted written testimony and filed briefs.

The PSC conducted six days of formal evidentiary hearings on May 4, 5, 7, 8, 11, and 12, 1992. In addition, the PSC also held community hearings on April 25, May 6, and May 14, 1992. Of the 44 witnesses who spoke during the three community meetings, eleven were ANC Commissioners. In addition, three other ANC Commissioners submitted written statements, two expressing the views of their ANCs. The PSC's order of June 26, 1992, No. 10044, authorized PEPCO to increase its annual retail rates by $30,380,000. The PSC reaffirmed this initial order on August 20, 1992, in Order No. 10080, denying OPC's and the District government's applications for reconsideration.

## II.

In this court, OPC contends that, in issuing Order No. 10044 and Order No. 10080, the PSC did not properly include the Advisory Neighborhood Commissions in its ratemaking process, as mandated by D.C.Code § 1–261. In denying the OPC's application for reconsideration, the PSC stated that D.C.Code § 1–261 "does not apply to Formal Case No. 912 inasmuch as this is not a rulemaking, a case enumerated in D.C.Code § 1–261(c), or a case affecting neighborhood planning or development." We agree that, given the circumstances of this case, the PSC did not err in reaching its conclusion.

The statute establishing ANCs, § 738 of the District of Columbia Self–Government and Governmental Reorganization Act, Pub.L. No. 93–198, 87 Stat. 774 (1973), now codified as D.C.Code § 1–251 (1992 Repl.),

sets out the powers of ANCs in general terms: "Each Advisory Neighborhood Commission ... [m]ay advise the District government on matters of public policy including decisions regarding planning, streets, recreation, social services programs, health, safety, and sanitation in that neighborhood commission area...." D.C.Code § 1–251(c)(1). A subsequent provision of the same statute indicates circumstances in which ANCs are entitled to receive special notice of impending decisions, so that they can provide advice on those matters:

> In the manner provided by act of the Council, in addition to any other notice required by law, timely notice shall be given to each Advisory Neighborhood Commission of requested or proposed zoning changes, variances, public improvements, licenses, or permits of significance to neighborhood planning and development within its neighborhood commission area for its review, comment, and recommendation.

D.C.Code § 1–251(d). Neither of these provisions specifically mentions utility rulemaking.

The general provisions contained in D.C.Code §§ 1–251(c)(1) and (d) were implemented by § 13 of the Duties and Responsibilities of the Advisory Neighborhood Commissions Act of 1975, D.C.Law 1–58, March 26, 1976, now codified as D.C.Code § 1–261. *See Kopff v. District of Columbia Alcoholic Beverage Control Bd.,* 381 A.2d 1372, 1379, 1380 (D.C.1977). According to D.C.Code § 1–261(a) and (b), ANCs are clearly entitled to receive notice of District government rulemakings that affect them:

> (a) Each Advisory Neighborhood Commission (hereinafter ... the "Commission") may advise the Council of the District of Columbia, the Mayor and each executive agency, and all independent agencies, boards and commissions of the government of the District of Columbia *with respect to all proposed matters of District government policy* including decisions regarding planning, streets, recreation, social services programs, edu-

cation, health, safety and sanitation which affect that Commission area. *For the purposes of this act, proposed actions of District government policy shall be the same as those for which prior notice of proposed rulemaking is required pursuant to § 1–506(a)* [1] *or as pertains to the Council of the District of Columbia.*

(b) Thirty days written notice of such District government actions or proposed actions shall be given by mail to each Commission affected by said actions....

(Emphasis added). The PSC concedes that, as one of the "independent agencies, boards and commissions of the government of the District of Columbia," it is subject to these provisions.

■ OPC does not contend that the rate-making at issue in this case is a rulemaking proceeding covered by § 1–261(a).[2] Instead, OPC contends that the ratemaking here qualifies as one of the adjudicative proceedings referred to in D.C.Code § 1–261(c)(1), which provides:

> Proposed District government actions covered by this act shall include, but shall not be limited to, actions of the Council of the District of Columbia, the executive branch, or independent agency. In addition to those notices required in subsection (a) of this section, each agency, board and commission shall, before the award of any grant funds to a citizen organization or group, or before the formulation of any final policy decision or guideline with respect to grant applications, comprehensive plans, requested or proposed zoning changes, variances, pub-

lic improvements, licenses, or permits affecting said Commission area, the District budget and city goals, and priorities, proposed changes in District government service delivery, and the opening of any proposed facility systems, provide to each affected Commission notice of the proposed action as required by subsection (b) of this section. Each District of Columbia agency shall maintain a record of such notices sent to each Commission.

In *Kopff*, we concluded that § 1–261(c) expands the category of situations requiring special notice to ANCs beyond the legislative activities designated in § 1–261(a), and that this expanded category includes certain—but not all—adjudicative proceedings. *See id.*, 381 A.2d at 1380–81. We stated that "we do not believe that the words 'policy decision or guideline,' as used in § 1–[261](c), indicate an intent to limit such special notice to legislative-type actions." *Id.* As one of our reasons for this conclusion, we noted that "most of the matters enumerated in § 1–[261](c) are specific activities directed at an ANC area," making them "usually discrete, local issues rather than the subjects of general policy-making." *Id.* at 1381.

In fact, all the cases dealing with D.C.Code § 1–261 or its predecessor[3] decided by this court since *Kopff* have concerned land use in one particular geographic locale, affecting one or at most a few adjacent ANCs. These cases include matters of zoning, *see, e.g., Glenbrook Road Ass'n v. District of Columbia Bd. of Zoning Adjustment*, 605 A.2d 22, 34–36 (D.C. 1992) (special exception for new law school site), building permits, *see e.g., Tenley &*

---

1. D.C.Code § 1–1506(a) (1992 Repl.) provides: The Mayor and each independent agency shall, prior to the adoption of any rule or the amendment or repeal thereof, publish in the District of Columbia Register (unless all persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law) notice of the intended action so as to afford interested persons opportunity to submit data and views either orally or in writing, as may be specified in such notice. The publication or service required by this subsection of any notice shall be made not less than 30 days prior to the effective date of the proposed adoption, amendment, or repeal, as the case may be, except as otherwise provided by the Mayor or the agency upon good cause found and published with the notice.

2. *But see Communication Workers Local 2336 v. District of Columbia Taxicab Comm'n*, 542 A.2d 1221, 1224–25 (D.C.1988) (emergency order increasing taxicab rates did not arise from contested case because hearing did not determine rights of specific parties; therefore, ratemaking proceeding is not adjudicative but legislative).

3. Section 1–261 was originally codified as D.C.Code § 1–171i.

*Cleveland Park Emergency Comm. v. District of Columbia Bd. of Zoning Adjustment,* 550 A.2d 331, 342 (D.C.1988) (building permit for large, mixed-use office-retail project), *cert. denied,* 489 U.S. 1082, 109 S.Ct. 1539, 103 L.Ed.2d 843 (1989), and liquor licenses, *see, e.g., Park v. District of Columbia Alcoholic Beverage Control Bd.,* 555 A.2d 1029, 1031 (D.C.1989) (retail liquor license).[4]

After concluding in *Kopff* that D.C.Code § 1–261(c) expands the category of situations requiring special notice to ANCs to include some adjudicative proceedings, we went on to limit the scope of that provision by reading it in conjunction with D.C.Code § 1–251(d). "An ANC is not necessarily entitled to special, thirty-day notice of *every* neighborhood matter listed in § 1–[251](c) of the ANC Act, for § 738(d) of the Home Rule Act [D.C.Code § 1–251(d) ] limits such notice to matters '*of significance* to neighborhood planning and development.'" *Kopff,* 381 A.2d at 1381 (empha-

sis in original). We concluded "that every proposed governmental decision affecting neighborhood planning and development, as defined in § 1–[261](c), for which a *prior hearing* is required by law is sufficiently significant to require written notice, pursuant to § 1–[261](b), to the affected ANC or ANCs." *Id.* (emphasis in original). We then noted that we did not mean to "imply that all administrative agency matters for which hearings are *not* required are automatically excluded from the realm of significance." *Id.* (emphasis in original). But while we left open the possibility that matters not requiring a hearing could "be sufficiently significant to neighborhood planning and development to warrant special notice to an ANC," *id.,* we did not suggest in any way that the kinds of neighborhood matters requiring special notice, even in the absence of a required hearing, could go beyond the kinds of matters specifically listed in § 1–261(c).

---

4. *See also Draude v. District of Columbia Bd. of Zoning Adjustment,* 582 A.2d 949 (D.C.1990) (special exception and variance for new addition to university medical building); *Beins v. District of Columbia Bd. of Zoning Adjustment,* 572 A.2d 122 (D.C.1990) (permit for rear addition on single-family detached dwelling); *Levy v. District of Columbia Bd. of Zoning Adjustment,* 570 A.2d 739 (D.C.1990) (university campus plan); *Embassy of the People's Republic of Benin v. District of Columbia Bd. of Zoning Adjustment,* 534 A.2d 310 (D.C.1987) (special exception for antenna tower); *Foxhall Community Citizens Ass'n v. District of Columbia Bd. of Zoning Adjustment,* 524 A.2d 759 (D.C.1987) (variance to convert church to condominiums); *Upper Georgia Ave. Planning Comm. v. Alcoholic Beverage Control Bd.,* 500 A.2d 987 (D.C.1985) (renewal of restaurant liquor license); *Gerber v. District of Columbia Alcoholic Beverage Control Bd.,* 499 A.2d 1193 (D.C.1985) (retail liquor license); *Georgetown Entertainment Corp. v. District of Columbia,* 496 A.2d 587 (D.C.1985) (lease of District government property); *Richardson v. District of Columbia Redevelopment Land Agency,* 453 A.2d 118 (D.C.1982) (selection of developers to submit proposals to D.C. Redevelopment Land Agency); *Donnelly v. District of Columbia Alcoholic Beverage Control Bd.,* 452 A.2d 364 (D.C.1982) (transfer of retail liquor license); *Comm. for Washington's Riverfront Parks v. Thompson,* 451 A.2d 1177 (D.C.1982) (construction of mixed-use development); *Foggy Bottom Ass'n v. District of Columbia Alcoholic Beverage Control Bd.,* 445 A.2d 643 (D.C.1982) (restaurant liquor license); *Haight v. District of Columbia Alcoholic Beverage Control Bd.,* 439 A.2d 487

(D.C.1981) (restaurant beer and wine license); *Bakers Local Union No. 118 v. District of Columbia Bd. of Zoning Adjustment,* 437 A.2d 176 (D.C.1981) (special exception for accessory parking in residential area); *Shiflett v. District of Columbia Bd. of Appeals & Review,* 431 A.2d 9 (D.C.1981) (permit to build restaurant); *Don't Tear It Down, Inc. v. District of Columbia Dep't of Housing & Community Dev.,* 428 A.2d 369 (D.C.1981) (permit to demolish buildings); *Lee v. District of Columbia Zoning Comm'n,* 411 A.2d 635 (D.C.1980) (zoning change permitting single-family rowhouses); *Kopff v. District of Columbia Alcoholic Beverage Control Bd.,* 413 A.2d 152 (D.C.1980) (restaurant liquor license); *Spevak v. District of Columbia Alcoholic Beverage Control Bd.,* 407 A.2d 549 (D.C.1979) (retail beer and wine license); *Friendship Neighborhood Coalition v. District of Columbia Bd. of Zoning Adjustment,* 403 A.2d 291 (D.C.1979) (special exceptions for supermarket parking lot); *Sheridan–Kalorama Neighborhood Council v. District of Columbia Bd. of Zoning Adjustment,* 411 A.2d 959 (D.C.1979) (special exception for conversion of chancery into offices and apartments); *American Univ. Park Citizens Ass'n v. Burka,* 400 A.2d 737 (D.C.1979) (permit for building containing stores and offices); *Wolf v. District of Columbia Bd. of Zoning Adjustment,* 397 A.2d 936 (D.C.1979) (area variance for multi-unit dwelling); *Wheeler v. District of Columbia Bd. of Zoning Adjustment,* 395 A.2d 85 (D.C. 1978) (special exception for professional office building).

■ Accordingly, reading D.C.Code § 1–261 as directed by *Kopff*, we conclude that ANCs are not entitled to special notice of an adjudicative proceeding unless the proceeding concerns a matter specifically listed in § 1–261(c). It is true that the first sentence of § 1–261(c)(1) is written with inclusive language: "Proposed District government actions covered by this act shall include, but shall not be limited to, actions of the Council of the District of Columbia, the executive branch, or independent agency." But this sentence pertains only to the type of governmental body taking action; it does not purport to affect the second sentence of § 1–261(c)(1), which presents an exclusive, and thus limited, list of matters about which affected ANCs are entitled to special notice of adjudicative proceedings.

The second sentence of § 1–261(c)(1) does not refer in any way to utility ratemaking. Nor do other phrases in that sentence call ratemaking to mind. More specifically, this proceeding does not involve a "grant," "comprehensive plan," "zoning change," "variance," "public improvement," "license," or "permit." It does not involve "the District budget" or "city goals[ ] and priorities." Nor does it involve "proposed changes in District government service delivery." That phrase by its terms includes only those services provided by the District government itself, either directly or under contract; government regulation of a utility or other service is not the same as government delivery of that service. Finally, even if we were to construe the last category in § 1–261(c)(1), "the opening of any proposed facility systems," to include private, as well as governmental, facility systems—an issue we do not resolve here[5]—we conclude that nothing in the ratemaking proceeding before us is covered by that phrase.

■ The last category in § 1–261(c)(1) would seem to pertain, for example, to the planning, construction, and opening or reopening, renovation, or demolition of a facility not presently in use. A new power generating facility would fit this description. The only such facility involved in this proceeding is a power plant, "Station H," under construction in Maryland. *See* Order No. 10044 at 72–95; Order No. 10080 at 9. This new plant, to be paid for in part by District ratepayers and intended to supply power in the District, will have no direct impact "of significance to neighborhood planning and development within" any particular "neighborhood commission area." D.C.Code § 1–251(d); *see id.* § 1–251(c) (referring to "neighborhood commission area"); *id.* § 1–261(c)(1) (referring to "said Commission area" and "each affected Commission"). To repeat: statutory notice to ANCs is required for "proposed governmental decision[s] affecting neighborhood planning and development," *Kopff*, 381 A.2d at 1381, as specified in the ANC statutes. On this record, OPC proffers no particular impact from the power plant under construction in Maryland on one or more ANC areas that meets this neighborhood-oriented test.

■ The impact of the power facility under construction in Maryland is entirely different from the situation where a utility requests any government action listed in the second sentence of § 1–261(c)(1), such as a zoning change or permit to build a power plant or other facility in the District. In those circumstances, an affected ANC is entitled to notice. *Cf. Citizens Coalition v. District of Columbia Bd. of Zoning Adjustment*, 619 A.2d 940, 946 (D.C.1993) (in granting Georgetown University special exception to construct addition to power plant, BZA addressed concerns raised by ANC 2E).[6]

---

5. The legislative history of § 13 of D.C.Law 1–58, the Duties and Responsibilities of the Advisory Neighborhood Commissions Act of 1975, D.C.Code § 1–261, provides no discussion of the scope the term "facility systems" was intended to have. *See* SPECIAL COMMITTEE ON ADVISORY NEIGHBORHOOD COMMISSIONS, COUNCIL OF THE DISTRICT OF COLUMBIA, REPORT NO. 1 ON BILL 1–193, THE DUTIES AND RESPONSIBILITIES OF THE ADVISORY NEIGHBORHOOD COMMISSIONS ACT OF 1975 (1975).

6. We note that a public utility must obtain "a certificate of present and future public convenience and necessity" from the PSC whenever the utility plans to "furnish a service or facility, directly or indirectly." D.C.Code § 43–501(b)

## III.

OPC contends that, even if ANCS are not entitled to the special notice established in D.C.Code §§ 1–251, –261, the PSC must still give "great weight" to any advice it actually receives from ANCs, as directed by § 1–261(d).[7] We cannot agree.

Both ANCs as entities and ANC Commissioners as individuals may be heard by the PSC as part of the public at large. The proceedings in this case complied with D.C.Code §§ 43–601(c) and (d) (1990 Repl.):

(c) Any public utility desiring to advance or discontinue any ... rates may make application to the Commission in writing, stating the advance in or discontinuance of the rate or rates desired, giving the reasons for such advance or discontinuance.

(d) Upon receiving such application the Commission shall fix a time and place for hearing, and give such notice to interested parties as shall be proper and reasonable; if, after such hearing and investigation, the Commission shall find that the change or discontinuance applied for is reasonable, fair, and just, it shall grant the application, either in whole or in part.

As we stated above in Part I., during the hearings conducted in this case by the PSC, several ANC Commissioners testified both orally and in writing, and two of them conveyed the views of their ANCs as entities.

If utility ratemaking came within the purview of D.C.Code § 1–261, then ANCs not only would have the right to receive special notice of the impending action, in accordance with § 1–261(b), but also would be entitled to have their views "given great weight during the deliberations" of the PSC, as directed by § 1–261(d). Because, however, D.C.Code §§ 1–251(d) and 1–261(c) do not include utility ratemaking among the matters about which ANCs are entitled to special notice, *see supra* Part II., it follows that the PSC did not err in failing to give "great weight" to the advice it actually received from ANCs and from individual ANC Commissioners. The "great weight" requirement is tied to the statutory "notice" requirement.

*Affirmed.*

(1990 Repl.). In full, D.C.Code § 43–501(b) provides:

No public utility shall furnish a service or facility, directly or indirectly, without first proceeding and proving to the satisfaction of the Public Service Commission ("Commission") that the present and future public convenience and necessity requires that the service be provided or the facility be offered. Upon application of a public utility for a certificate of present and future public convenience and necessity pursuant to this subsection, the Commission, upon a hearing and notice to the public, shall issue an order granting or denying the application, in whole or in part, stating the reasons for the action. The Commission may prescribe terms and conditions upon a grant of an application for a certificate of present and future public convenience and necessity as the Commission, in its discretion, decides are necessary to further the present and future public convenience and necessity. The Commission is authorized to promulgate any rules necessary to implement this subsection.

No such certificate of convenience and necessity is involved here. We express no opinion as to how this provision interacts with the ANC statutes.

7. D.C.Code § 1–261(d) provides:

Each [ANC] so notified pursuant to subsections (b) and (c) of this section of proposed District government action or actions shall consider each such action or actions in a meeting with notice given in accordance with § 1–262(c) which is open to the public in accordance with § 1–262(g). No official action may be taken by a[n ANC] unless a majority of the elected representatives of the [ANC] is present. At the close of business of the 31st day from mailing of such written notice or earlier if such limited publication has been provided, the affected District government entity may proceed to make its decision. The issues and concerns raised in the recommendations of the [ANC] shall be given great weight during the deliberations by the governmental agency and those issues shall be discussed in the written rationale for the governmental decision taken. "Great weight" requires acknowledgement of the [ANC] as the source of the recommendations, and requires explicit reference to each ANC issue and concern as such as well as specific findings and conclusions with respect to each.