## CITIZENS ASSOCIATION OF GEORGETOWN, et al., Petitioners,

v.

## DISTRICT OF COLUMBIA BOARD OF ZONING ADJUSTMENT, Respondent,

and

### District of Columbia, Intervenor.

No. 92–AA–1165.

District of Columbia Court of Appeals.

Argued April 13, 1994.

Decided May 26, 1994.

Steven M. Schneebaum, with whom Martha M. Kendrick, Washington, DC, was on the brief, for petitioners.

Lutz Alexander Prager, Asst. Deputy Corp. Counsel, with whom John Payton, Corp. Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, Washington, DC, were on the brief, for intervenor.

Before FERREN, Acting Chief Judge, TERRY, Associate Judge, and PRYOR, Senior Judge.

FERREN, Acting Chief Judge:

The District of Columbia filed an application with the Board of Zoning Adjustment (BZA) for a special exception, pursuant to 11 DCMR § 218.7 (1991),[1] to establish the Hurt Home as a youth residential care home for twenty-four persons. The BZA granted the special exception. Petitioners, the Citizens Association of Georgetown and other individuals, challenge the BZA's authority to grant

---

1. The BZA's decision refers to this provision of the zoning regulations as 11 DCMR § 219. The regulations were renumbered in the 1991 edition of 11 DCMR, and § 218 now governs youth care homes and community residence facilities. The text of the regulations was not changed when they were renumbered. We use the more current numbering, which presumably will be applicable to similar cases in the future.

the special exception, arguing (among other things) that the zoning regulations do not permit special exceptions for youth residential care homes for more than fifteen persons. We agree with petitioners and reverse the BZA's order.

## I.

In 1987, the District of Columbia purchased the Hurt Home for the Blind, an institution located in Georgetown at 3050 R Street, N.W., and zoned R–1–B. Before the District bought the Hurt Home, the Department of Human Services announced its intention to establish a residential treatment center for twenty-four emotionally disturbed young people. Certain neighbors of the Hurt Home opposed the District's plan.

After the District acquired the Hurt Home, it began the necessary renovations to prepare the building for its intended use. Relying on a June 23, 1988 Superior Court opinion by Judge Weisberg, which held that the District's zoning laws did not apply to the District as property owner, the District did not initially seek zoning review of its proposed facility. After this court's opinion in *Speyer v. Barry,* 588 A.2d 1147 (D.C.1991), however, which reversed in part Judge Weisberg's opinion, the District applied for a Certificate of Need from the State Health Planning and Development Agency. That agency eventually granted the Certificate of Need,

which is now under review by the Board of Appeals and Review and is not before us in this appeal.

Also in response to our *Speyer* opinion, the District applied to the BZA on July 9, 1991 for a special exception to the zoning regulations to allow the District to establish the Hurt Home as a youth residential care home for more than fifteen persons.[2] The application, filed pursuant to 11 DCMR § 218.7,[3] see *supra* note 1, described the proposed facility as a "Residential Treatment Facility for 24 Youths" "designed to serve 24 emotionally disturbed boys and girls, ages 6 to 12 years upon admission, who have demonstrated a need for 24 hour intensive therapeutic services in a residential setting." The BZA held a hearing on October 9, 1991, where the Citizens Association of Georgetown and a number of individuals appeared and offered testimony.

The Citizens Association opposed the District's special exception application on four grounds: (1) Chapter 11 DCMR § 218.7, *supra* note 3, does not authorize the BZA to grant a special exception of any kind, and thus a variance would be required for the District's proposal;[4] (2) even if § 218.7 grants the BZA special exception authority, the proposed facility is not a "youth residential care home," as defined by applicable regulations;[5] (3) even if the proposed facility

2. We do not address the question whether special exceptions are required for all youth residential care homes, irrespective of the number of persons occupying them. We note that 11 DCMR § 218.1 provides:

Youth residential care home or community residence facility for nine (9) to fifteen (15) persons, not including resident supervisors and their family, shall be permitted in an R–1 district if approved by the Board of Zoning Adjustment in accordance with the conditions specified in § 3108 ["special exceptions"] of chapter 31 of this title, subject to the provisions of this section.

3. Chapter 11 DCMR § 218.7 provides:

In the case of a community residence facility, the Board may approve a facility for more than fifteen (15) persons, not including resident supervisors and their families, only if the Board finds that the program goals and objectives of the District cannot be achieved by a facility of a smaller size at the subject location, and if

there is no other reasonable alternative to meet the program needs of that area of the District.

4. Petitioners base their argument on the fact that, in companion regulations governing community-based residential facilities, in par-particular 11 DCMR §§ 218.1, 219.1, 220.1, and 221.1 (1991), there are express cross-references to the BZA's special exception authority specified in 11 DCMR § 3108, whereas § 218.7 contains no reference to § 3108. See *supra* note 2 (quoting 11 DCMR § 218.1).

5. The regulations define a "youth residential care home" as

a facility providing safe, hygienic, sheltered living arrangements for one (1) or more individuals less than eighteen (18) years of age, not related by blood, adoption, or marriage to the operator of the facility, who are ambulatory and able to perform the activities of daily living with minimal assistance.

11 DCMR § 199.1. Petitioners contend that the Hurt Home residents would not satisfy the last

would meet the criteria for such a home, the BZA cannot grant the District a special exception because § 218.7 authorizes a special exception only for a "community residence facility,"[6] not for a "youth residential care home;" and (4) even if the BZA had authority to grant a special exception for a youth residential care home for more than fifteen persons, reversal is required because the BZA ignored, and the District presented no evidence to satisfy, the § 218.7 requirement permitting special exceptions only when "there is no other reasonable alternative to meet the program needs of that area of the District." *Supra* note 3.

In an order dated August 27, 1992, the BZA granted the District's application for a special exception. The BZA concluded, contrary to the Citizens Association's contentions, that "the children to be served [by the proposed facility] meet the characteristics of persons described in the definition of youth residential care home," and that "special exception relief for a youth residential care home under [11 DCMR § 218.7] is consistent with the intent of the Zoning Regulations." Petitioners now challenge the BZA's order in this court.

## II.

We can dispose of the petition by considering petitioners' third argument, and thus we do not address the others.

## A.

█ Petitioners contend that the plain language of 11 DCMR § 218.7 clearly states

that the BZA has authority to approve a facility for more than fifteen persons only "[i]n the case of a community residence facility," 11 DCMR § 218.7, *supra* note 3, and, therefore, that the BZA implicitly lacks the additional authority to approve a "youth residential care home," which § 218.7 fails to mention. Petitioners stress that there is a fundamental difference between these two types of facilities that would justify different zoning treatment because of the different populations involved and thus the different potential impacts on neighborhoods: community residence facilities are for adults age eighteen and over; youth residential care homes are for youths under age eighteen. See *supra* notes 5 and 6. The District does not dispute the clarity of the language of § 218.7 but argues that the legislative history of § 218.7 reflects that "§ 218.7's failure to refer to residential youth care homes was an inadvertent omission."

The BZA agreed with the District, concluding that

special exception relief for a youth residential care home under Subsection [218.7], is consistent with the intent of the Zoning Regulations as set forth in Zoning Commission Order No. 347. In that order, both terms—"youth residential care home" and "community residence facility"—are defined and listed as sub-categories of the general term "community-based residential facility." It is the Board's view that the Zoning Commission intended to allow both youth care homes and community residence facilities for more than 15 persons if certain conditions were met.[7]

clause: "able to perform the activities of daily living with minimal assistance."

6. The regulations define "community residence facility" as

> a facility providing safe, hygienic sheltered living arrangements for one (1) or more individuals aged eighteen (18) years or older (except that, in the case of group homes for mentally retarded persons, no minimum age limitation shall apply), not related by blood or marriage to the residence director, who are ambulatory and able to perform the activities of daily living with minimal assistance.

22 DCMR 3099.1 (1986); *see also* 11 DCMR 199.1.

7. Zoning Commission Order No. 347, 28 D.C.Reg. 3547–55 (1981), is the "legislative his-

tory" for the 1981 amendments to the relevant zoning regulations, which revised the definitions and locations of community-based residential facilities. In concluding that "special exception relief for a youth residential care home under Subsection 218.7 is consistent with the intent of the Zoning Regulations," the BZA relied primarily on a single sentence in Order No. 347. In a discussion of the seven subcategories of community-based residential facilities, Order No. 347 states:

> Community residence facilities ... are permitted in the same zones and in the same manner as youth residential care homes.

28 D.C.Reg. at 3551.

**B.**

"This court's review of the decision of the Board of Zoning Adjustment is limited to a determination of whether the decision is arbitrary, capricious, or otherwise not in accordance with the law." *Davidson v. Board of Zoning Adjustment,* 617 A.2d 977, 981 (D.C. 1992). "The Board's interpretation of the [zoning] regulations must be accorded great weight, and must be upheld unless it is plainly erroneous or inconsistent with the regulations." *Glenbrook Rd. Ass'n. v. Board of Zoning Adjustment,* 605 A.2d 22, 30 (D.C. 1992).

On the other hand, in construing the regulation, while giving due deference to the BZA, we cannot abandon our traditional rules for interpreting statutes. More specifically, when interpreting a statute or regulation, we first look to the language of the act, *see McDonald v. United States,* 496 A.2d 274, 276 (D.C.1985), and when the language is unambiguous and does not produce an absurd result, we will not look beyond its plain meaning. *See J. Frog, Ltd. v. Fleming,* 598 A.2d 735, 738 (D.C.1991); *see also Peoples Drug Stores, Inc. v. District of Columbia,* 470 A.2d 751, 755 (D.C.1983) (en banc). We have stated on numerous occasions that "when the language of a statute is clear and admits of no more than one meaning, we are not empowered to look beyond the literal words of the statute." *Nova Univ. v. Educ. Inst. Licensure Comm'n,* 483 A.2d 1172, 1179 (D.C.1984), *cert. denied,* 470 U.S. 1054, 105 S.Ct. 1759, 84 L.Ed.2d 822 (1985); *see also Auger v. District of Columbia Bd. of Appeals & Review,* 477 A.2d 196, 211 (D.C.1984). Thus, if the meaning of the plain language of a statute is clear, we must enforce it according to its terms, *see United States v. Edelen,* 529 A.2d 774, 778 (D.C.1987), and "there is no need to engage in an analysis of legislative intent." *Butler v. Butler,* 496 A.2d 621, 622 (D.C.1985).

In this case, despite the deference we owe to the BZA interpretation of the zoning regulations, we must conclude that the BZA's interpretation of § 218.7 is "plainly erroneous" and "inconsistent with the regulations," *id.,* because that interpretation violates the rules of construction traditionally applicable to statutes and regulations. We do agree, as the BZA noted, that one sentence in Zoning Commission Order No. 347 appears to suggest an intention to treat youth residential care homes and community residence facilities the same way for all purposes. See *supra* note 7. But, as elaborated below, whatever that sentence in the legislative history may indicate—and, given its generality, it is hardly conclusive—it cannot dictate the result when the plain language of the regulation is to the contrary.

We agree with petitioner's position for three reasons. First, the language of the regulation at issue here, 11 DCMR § 218.7, is unambiguous, does not produce an absurd result, and plainly does not provide the BZA with the authority it purported to exercise in this case: "In the case of a *community residence facility,* the Board may approve a facility for more than fifteen (15) persons...." 11 DCMR § 218.7 (emphasis added), *supra* note 3. Section 218.7, therefore, gives the BZA authority to grant special exceptions for more than fifteen persons only for a category of residential facilities that differs from the category at issue here. Compare *supra* notes 5 and 6. We are guided by a traditional rule of statutory construction: "[w]hen a legislature makes express mention of one thing, the exclusion of others is implied, because 'there is an inference that all omissions should be understood as exclusions.'" *McCray v. McGee,* 504 A.2d 1128, 1130 (D.C. 1986) (quoting 2A Sutherland, Statutes and Statutory Construction § 47.23 (4th ed. 1984)). Section 218.7 specifically mentions a community residential facility; it does not mention a youth residential care home. We therefore must conclude that, by referring only to community residence facilities in § 218.7, the Zoning Commission implicitly denied the BZA authority to grant special exceptions for youth residential care homes.

Second, it is clear from looking at 11 DCMR § 218 as a whole that the Zoning Commission, in drafting § 218.7, intended to treat community residence facilities and youth residential care homes differently. Section 218 of the Zoning Regulations, entitled "Youth Care Homes and Community Residence Facilities," regulates the zoning

for both types of places. All the subsections of § 218, with the exception of subsection 218.7, treat community residence facilities and youth residential care homes identically. Subsection 218.7, on the other hand, distinguishes between those two types of facilities, expressly granting the BZA special exception authority for the one while not mentioning the other. Accordingly, it seems clear that the Zoning Commission was aware of the distinction it made between community residence facilities and youth residential care homes when it drafted § 218.7. *See In re Bicksler*, 501 A.2d 1, 6 (D.C.1985) ("statutory provisions must be construed together with related provisions and not in isolation").

Finally, we have said that "[w]hen interpreting any portion of an act, the statutory meaning of a term or phrase must 'be derived not from the reading of a single sentence or section, but from consideration of [the] entire enactment against the backdrop of its policies and objectives." *Carey v. Crane Serv. Co.*, 457 A.2d 1102, 1105 (D.C. 1983) (quoting *Don't Tear It Down v. Pennsylvania Ave. Dev. Corp.*, 206 U.S.App.D.C. 122, 128, 642 F.2d 527, 533 (1980)). We therefore may interpret § 218 by taking into account the regulations that govern all community-based residential facilities,[8] which include youth residential care homes.

■ Sections 218 through 221 of Chapter 11 DCMR regulate seven categories of community-based residential facilities. See *su-*pra note 8. Section 218, the regulation at issue here, regulates zoning of youth residential care homes and community residence facilities; section 219 regulates zoning of health care facilities; section 220 regulates zoning of emergency shelters; and section 221 regulates zoning of youth rehabilitation homes, adult rehabilitation homes, and substance abusers' homes. See *supra* note 8. It is interesting to note that every subsection of § 221, which regulates three types of facilities, treats them identically in every respect. *See, e.g.*, 11 DCMR § 221.7 (limiting approval of a youth rehabilitation home, adult rehabilitation home, or substance abusers' home to not more than one in a square or within 1,000 feet of each other). In contrast with § 221, § 218 distinguishes in at least one respect between the two types of facilities it regulates, expressly giving the BZA authority to grant a special exception for more than fifteen persons for a "community residence facility" but not for a "youth residential care home." This analysis, therefore, buttresses our conclusion that the Zoning Commission knew how to draft regulations that treated separate categories of facilities the same while treating others differently, and that the Commission accordingly intended in § 218.7 to treat community residence facilities and youth residential care homes differently by withholding special exception authority from the BZA as to the latter.[9]

\*        \*        \*

8. "Community-based residential facility" is defined as

> a residential facility for persons who have a common need for treatment, rehabilitation, assistance, or supervision in their daily living.... If an establishment is a community-based residential facility as defined in this section, it shall not be deemed to constitute any other use permitted under the authority of these regulations ... All community-based residential facilities shall be included in one (1) or more of the following subcategories:
> (a) Adult rehabilitation home
> (b) Community residence facility
> (c) Emergency shelter
> (d) Health care facility
> (e) Substance abusers home
> (f) Youth rehabilitation home
> (g) Youth residential care home

11 DCMR § 199.1 (1991).

9. Petitioners have supplemented the record with a very recent Zoning Commission Order, No. 754, Case No. 93–4, 41 D.C.Reg. 1616–20 (March 25, 1994), which denied a petition submitted by the Mayor on February 1, 1993, "request[ing] the [Zoning] Commission to permit the Board of Zoning Adjustment (BZA) to consider for approval more than 15 residents as a special exception for a youth residential care home in the R–1 zone district." 41 D.C.Reg. at 1616. The Mayor proposed the following language to amend the text of zoning regulation § 218.7:

> The Board may approve a *youth residential care home or a community residence facility* for more than fifteen (15) persons, not including resident supervisors and their families, only if the Board finds that the program goals and objectives of the District cannot be achieved by a facility of a smaller size at the subject location, and if there is no other reasonable alternative to meet the program needs of the District.

*Id.* (emphasis added). The Commission denied the Mayor's petition, stating:

In sum, we conclude that § 218.7 does not grant the BZA authority to approve a youth residential care home for more than fifteen persons in an R–1 zone. We reverse the BZA's order granting the District a special exception to establish the Hurt Home as a youth residential care home for 24 persons.

*Reversed and remanded.*

The Commission concurred with the position of all the ANC's and determined that the proposed amendments will not be in the interest of the District of Columbia. The Commission believes that a [youth residential care home] with more than 15 residents is not an appropriately sized facility of this type to be given special exception relief in the R–1 zone district. In considering and balancing all the testimony relative to the proposal, the Commission believes that the proposed amendments are not in the best interest of the District of Columbia, and are inconsistent with the intent and purpose of the Zoning Regulations and Zoning Act. In consideration of the reasons set forth herein, the Zoning Commission for the District of Columbia orders DENIAL of Z.C. Case No. 93–4.

41 D.C.Reg. at 1620. Our decision in this case does not rely on Order No. 754 because that order is not relevant legislative history. *See McIntosh v. Washington,* 395 A.2d 744, 750 n. 12 (D.C.1978) ("[T]he views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one.") (quoting *United States v. Price,* 361 U.S. 304, 313, 80 S.Ct. 326, 332, 4 L.Ed.2d 334 (1960)). We cite Order No. 754 simply to show that the present Zoning Commission apparently reads the language of § 218.7 as we do.