**NEIGHBORS UNITED FOR A SAFER COMMUNITY, Petitioner,**

v.

**DISTRICT OF COLUMBIA BOARD OF ZONING ADJUSTMENT, Respondent,**

and

**Roy Littlejohn Associates, Inc., Intervenor.**

**No. 91–AA–1009.**

District of Columbia Court of Appeals.

Argued April 7, 1993.

Decided Sept. 26, 1994.

Louise A. Howells, Dist. of Columbia School of Law, with whom Susan J. Aramaki, was on the brief, for petitioner.

John Payton, Corp. Counsel at the time the statement was filed, and Charles L. Reischel, Deputy Corporation Counsel, were on the statement in lieu of brief, for respondent.

Iverson O. Mitchell, III, for intervenor.

Before TERRY and SULLIVAN, Associate Judges, and MACK, Senior Judge.*

SULLIVAN, Associate Judge:

This case is before the court on a petition by Neighbors United For a Safer Community ("Neighbors")[1] for review of an order of the District of Columbia Board of Zoning Adjustment ("the BZA") granting the application of Roy Littlejohn Associates, Inc. ("the applicant") for a special exception[2] to operate an adult rehabilitation home[3] for female offenders at 2425 Naylor Road, Southeast.[4] The special exception was granted pursuant to 11 DCMR § 357 (1991).[5]

Although this appeal presents numerous issues, only one requires plenary discussion: that is, whether the BZA, in considering the written reports of the "affect[ed]" Advisory Neighborhood Commissions ("ANCs"),[6] af-

---

* Former *Chief Judge* ROGERS was a member of the division that heard oral argument in this case. After her departure from the court, *Senior Judge* MACK was selected by lot to replace her.

1. Neighbors is a community organization which represented nearly 1,000 persons at the time of the Board hearing. The organization was formed in July 1989 by the residents of the 1600 and 1700 blocks of 25th Street, Southeast, and the 2300 blocks of Q and R Streets, Southeast, in response to increasing crime and drug problems in the neighborhood. Membership, however, is not limited to a particular geographical area.

2. *See* 11 DCMR § 3108.1 (1991), which provides in relevant part that:

 [T]he Board is authorized to grant special exceptions ... where ... those special exceptions will be in harmony with the general purpose and intent of the Zoning Regulations and Maps and will not tend to affect adversely the use of neighboring property....

3. Adult rehabilitation home, a sub-category of a community-based residential facility, is defined at 11 DCMR § 199.1 (1991) as follows:

 (a) Adult rehabilitation home—a facility providing residential care for one (1) or more individuals sixteen (16) years of age or older who are charged by the United States Attorney

with a felony offense, or any individual twenty-one (21) years of age or older, under pre-trial detention or sentenced court orders[.]

4. The applicant, as owner of the property, agreed to allow Washington Half–Way Home for Women, Inc., to operate the facility.

5. 11 DCMR § 357.1 (1991) provides:

 Youth rehabilitation homes, adult rehabilitation homes, or substance abusers homes for one (1) to twenty (20) persons, not including resident supervisors and their families, shall be permitted in an R–5 district if approved by the Board of Zoning Adjustment in accordance with the conditions specified in § 3108 of chapter 31 of this title, subject to the standards and requirements of §§ 358.2 through 358.7 and 358.9.

6. D.C.Code § 1–261(a) (1992 & 1994 Supp.) provides in relevant part:

 Each Advisory Neighborhood Commission ... may advise the Council of the District of Columbia, the Mayor and each executive agency, and all independent agencies, boards and commissions of the government of the District of Columbia with respect to all proposed matters of District government policy including decisions regarding planning, streets, recre-

forded the ANCs' views the statutorily-required "great weight." [7] Our inquiry is twofold. First, since the proposed adult rehabilitation home would be located on the street which forms the boundary line between ANC 6C and ANC 7B, but on the side which is within the area represented by ANC 6C, we must decide whether ANC 7B is an "affect[ed]" ANC whose written recommendations are entitled to "great weight." Second, we must decide whether the BZA gave the requisite "great weight" to ANC 6C's opinions, and, if applicable, to ANC 7B's recommendations as well.

We hold that the BZA's decision "affect[ed]" both ANC 6C and ANC 7B and that, therefore, the written reports of both ANC's 6C and 7B were entitled to "great weight." We hold further that the BZA failed to give "great weight" to the views of either of the affected ANCs. Accordingly, we reverse the BZA's order.[8]

## I.

### FACTUAL BACKGROUND

#### A. The Property

The property is located on the southwest corner of the intersection of 25th Street and Naylor Road in Ward Six and is zoned R–5–A. Although it is within Ward Six, it is directly on the boundary line between Wards Six and Seven, with 25th Street as the dividing line. The Ward Six side of the street includes the area represented by ANC 6C, and the Ward Seven side includes the area represented by ANC 7B. The R–5–A zoning classification "permits multiple-unit residential land use." [9]

The property is improved by a three-story plus basement, red-brick, fourteen-unit apartment building, thirteen of which have two bedrooms. The building is part of a neighborhood characterized predominantly by single-family, detached and semi-detached homes, and low-rise multi-family apartment buildings. The neighborhood is a racially-mixed, stable, middle-class neighborhood, with many owner-occupied homes and many long-term residents.

> The property is abutted by a church and is located across the street from an elementary school. There are a total of six churches and four schools located within a half-mile radius of the property. There are also numerous community-based residential facilities located within the areas represented by ANCs 6C and 7B.

#### B. The Application for Special Exception

The application for special exception was made pursuant to a ruling by the Chief of the Zoning Review Branch, who disapproved an application for a certificate of occupancy to use the premises as an adult rehabilitation home for sixty women. The Chief's ruling directed the applicant to request instead the special exception adult rehabilitation home and a variance to permit sixty women plus rotating staff rather than the maximum of twenty allowed by the regulation. Although the BZA granted the special exception, it denied the variance.[10] No petition for review of the BZA's denial of the request for variance has been filed in this court. Thus, only

ation, social services programs, education, health, safety and sanitation which affect that Commission area.

7. D.C.Code § 1–261(d) (1992 & 1994 Supp.) provides in relevant part:
 The issues and concerns raised in the recommendations of the Commission shall be given great weight during the deliberations by the governmental agency and those issues shall be discussed in the written rationale for the governmental decision taken. "Great weight" requires acknowledgement of the Commission as the source of the recommendations, and requires explicit reference to each ANC issue and concern as such as well as specific findings and conclusions with respect to each.

8. In view of our reversal of the BZA's decision granting the special exception, we need not reach the other issues raised by Neighbors. Moreover, our disposition obviates the need to reach Neighbors' request that we remand on the basis of alleged new evidence.

9. *Glenbrook Rd. Ass'n v. District of Columbia Bd. of Zoning Adjustment,* 605 A.2d 22, 26 (D.C. 1992).

10. The BZA subsequently denied motions to stay its earlier order and granted motions for reconsideration, thereby limiting its approval to three years and requiring the applicant to establish and maintain a community liaison program.

the ruling of the BZA granting the application for a special exception is before this court on appeal.

## C. The Views of ANCs 6C and 7B

Both ANCs 6C and 7B received notices dated May 1, 1990, from the District Government, informing them of the filing of the application for special exception with the BZA. ANC 6C was advised that:

> [T]he application ... falls within the boundaries of your Advisory Neighborhood.... In accordance with 11 DCMR [§] 3307 [1991], the written report of the ANC shall be filed at least seven days before the date of the hearing, and shall contain certain information specified in that section.

ANC 7B was advised that:

> The property that is the subject of this application is NOT within your ANC boundary. However, as a matter of courtesy, I am attaching a copy of the application as your ANC may be affected by this application.

Both ANCs 6C and 7B received virtually identical letters dated May 17, 1990, advising them of the public hearing scheduled by the BZA to consider the applicant's request for special exception. The letters differed only in the language of the first paragraph. The letter to ANC 6C advised that the BZA would consider "the following application located within the boundaries of your ANC area." The letter to ANC 7B advised that the BZA would consider "the following application located within the boundaries of ANC 6C and in proximity to your ANC."

The letters to both ANCs invited written reports in identical third paragraphs, which stated:

> You are advised that Section 108 of the Supplemental Rules of Practice and Procedure before the Board of Zoning Adjustment sets out certain requirements related to reports of ANC's, and specifically that

Section 108.1 requires that the written report of the ANC be filed with the Board at least seven days in advance of the hearing.

Identical addenda to the letters to both ANCs consisted of an excerpt from the municipal regulations concerning ANCs. Specifically, the addenda quoted 11 DCMR § 3307.1 (1991), which sets forth the requirements for the written reports to be submitted. The addenda also quoted 11 DCMR § 3307.2 (1991), which provides:

> The Board shall give "great weight" to the written report of the ANC, as required by D.C.Code § 1–261 (1981).

ANC 6C voted unanimously to recommend that the BZA reject the application for the special exception, and expressed the following concerns in a memorandum to the BZA dated June 18, 1990:

> 1. [The community is] already overrun with various kinds of residential facilities....[11]
>
> \* \* \* \* \* \*
>
> 3. The community has had unpleasant experiences with similar type projects in the past.

ANC 7B also voted unanimously to recommend rejection of the application for the special exception, and expressed the following concerns in a letter to the BZA dated June 20, 1990:

> 1. This Commission is concerned about [t]he proliferation of group homes in this [s]outheast section of the city. Granting of zoning variances or special exceptions to permit the establishment of youth and adult rehabilitation homes in residential communities constitute a matter of significant importance to the neighborhood planning, development and stability.[12]
>
> \* \* \* \* \* \*
>
> 2. The community has ... giv[en] great consideration to the fact that there is an elementary school on property adjoining the site of the proposed halfway house.[13]

---

11. The concerns related to Neighbors' request for a variance, which is not before this court on appeal, have been omitted.

12. See note 11, *supra*.

13. The elementary school (Naylor Park) does not actually adjoin the subject property, because it is separated from the property by a street, Ridge Place.

Furthermore, the community is already experiencing tremendous problems with drugs in the area and feel that this facility would exacerbate the problems.

## II.

Our standard of review is well-settled. As we recently reiterated in *Citizens Ass'n of Georgetown v. District of Columbia Bd. of Zoning Adjustment*, 642 A.2d 125, 128 (D.C. 1994) (internal quotation marks omitted):

This court's review of the decision of the Board of Zoning Adjustment is limited to a determination of whether the decision is arbitrary, capricious or otherwise not in accordance with the law. *Davidson v. Board of Zoning Adjustment*, 617 A.2d 977, 981 (D.C.1992). The Board's interpretation of the [zoning] regulations must be accorded great weight, and must be upheld unless it is plainly erroneous or inconsistent with the regulations. *Glenbrook Rd. Ass'n v. Board of Zoning Adjustment*, 605 A.2d 22, 30 (D.C.1992).

■ We begin our analysis by addressing the issue of whether the written report of ANC 7B was entitled to "great weight" pursuant to D.C.Code § 1–261(a) and 11 DCMR § 3307.2. In *Kopff v. District of Columbia Alcoholic Beverage Control Bd.*, 381 A.2d 1372, 1384 (D.C.1977), this court held that "great weight" means that "[a board] must elaborate, with precision, its response to the ANC issues and concerns." In other words, "[a board must make] explicit reference to each ANC issue and concern *as such*, as well as specific findings and conclusions with respect to each." *Id.* A board is also obliged to "articulate why the particular ANC itself, given its vantage point, does—or does not—offer persuasive advice under the circumstances." *Levy v. District of Columbia Bd. of Zoning Adjustment*, 570 A.2d 739, 746 (D.C.1990) (citations and internal quotation marks omitted). Neither *Kopff* nor *Levy*, however, involved the precise factual situation present in this case—a property on the borderline of two ANCs; nor has this court

addressed that precise issue in any other case.

■ Since there are no prior decisions of this court which are directly on point, we look for guidance to the language of the statute itself. *See McDonald v. United States*, 496 A.2d 274, 276 (D.C.1985) ("[i]n interpreting a statute, we first look to the language of the act"); *see also Citizens Association of Georgetown, supra*, 642 A.2d at 128. We will not look beyond the statute's plain meaning when the language is unambiguous and does not produce an absurd result. *Id.* D.C.Code § 1–261(a) provides as follows:

Each Advisory Neighborhood Commission ... may advise ... [the BZA] with respect to all proposed matters of District government policy ... *which affect that Commission area.*

(Emphasis added). Applicant urges this court to construe the statutory requirement narrowly by limiting it to that area represented by the ANC—6C—where the property is located. Applicant argues further that the BZA did all it was required to do by inviting ANC 7B to *participate* in the hearing as a party.[14] We are not persuaded.

In our view, it would be manifestly unreasonable to conclude that the area represented by an ANC which is physically located directly across the street from the proposed facility for which the special exception is sought would not be affected by it. The BZA itself apparently recognized that ANC 7B would be affected. In its initial notice to ANC 7B dated May 1, 1990, the BZA advised that "your ANC may be *affected* by this application." (Emphasis added.) By its letters dated May 17, 1990, it took a more decisive position on the issue. BZA sent essentially identical letters to ANC 7B and ANC 6C, clearly inviting both to submit written reports on the same terms, and even spelling out what those terms were by attaching as an addendum the exact excerpt from the District's municipal regulations, including, most notably, the "great weight" provision, 11 DCMR § 3307.2.

14. *See* Board Finding No. 30, which states: Advisory Neighborhood Commission (ANC) 7B, was notified of the application and partici-

pated in the hearing as a party, even though the subject property is not within the boundaries of that ANC.

 The status of ANC 7B at the hearing as a party, while also important, is not determinative, however, of whether its views should be given "great weight." The "great weight" requirement pertains "only to the *written recommendations* of the [affected] ANC" and not to its oral testimony. *Friendship Neighborhood Coalition v. District of Columbia Bd. of Zoning Adjustment,* 403 A.2d 291, 295 (D.C.1979). Moreover, the applicant conceded during oral argument on appeal that it would be unreasonable to conclude that ANC 7B would not be affected by the proposed facility. Applicant maintained, however, that ANC 7B's written opinion was still not entitled to "great weight." Applicant's argument is patently contradictory. Clearly, D.C.Code §§ 1–261(a) and (d), when read literally, require that "great weight" be given to the written reports of "affect[ed]" ANCs. It would defy both logic and common sense to conclude that an ANC can be "affect[ed]" but its written opinion not entitled to "great weight." Thus, we conclude that the area represented by ANC 7B was "affect[ed]" by the proposed adult rehabilitation facility for which the special exception was sought and that, therefore, ANC 7B's written recommendations were entitled to be given "great weight" by the BZA.

## III.

We consider next whether the BZA afforded ANC's 6C and 7B the "great weight" required by the D.C.Code and regulations.

### A. *ANC 6C's Concerns*

The BZA recounted the issues raised by ANC 6C in Finding No. 31. It also addressed ANC 6C's recommendation that the application for special exception should be denied because the community is "overrun with various types of residential facilities." Finding No. 31 states in relevant part:

[T]he Board finds from a statistical breakdown of all community based residential facilities in the District of Columbia that Ward 6 falls in the middle of the range, having only 15% of the total number of such facilities (by contrast, Ward 4 has

24%). Moreover, there is only one adult rehabilitation home located in Ward 6.

With respect to ANC 6C's concern about the number of residential facilities in the community, the BZA's Finding No. 31 addressed only the number in Ward Six as a whole. It did not respond "with precision," *see Kopff, supra,* 381 A.2d at 1384, regarding the number of such facilities in the much more limited "area" represented by ANC 6C, as required by D.C.Code § 1–251(a) (1992).

 D.C.Code § 1–251(a) mandates that the Council divide the District of Columbia into "neighborhood commission areas." Although neither "area" nor "neighborhood" is included among the definitions in D.C.Code § 1–202 (1992) or in 11 DCMR § 199.1, 11 DCMR § 199.2(g) (1994) provides that "[w]ords not defined in this section shall have the meanings given in *Webster's Unabridged Dictionary*." *See also Concerned Citizens of Brentwood v. District of Columbia Bd. of Zoning Adjustment,* 634 A.2d 1234, 1242 n. 18 (D.C.1993). Thus, for our purposes, the correct definition of "area" is a "definitely bounded piece of ground set aside for a specific use or purpose." Webster's Third New International Dictionary 115 (1986).

 In the context of D.C.Code § 1–251(a), it is clear that the definite boundaries of the term "area" are those of an affected ANC, in this case, ANC 6C and 7B. The noun phrase "neighborhood commission" undoubtedly modifies "area;" any possible doubt is dispelled by the interchangeable use of "neighborhood commission area," "Neighborhood Commission," and "neighborhood." *Id. See also Office of the People's Counsel v. Public Serv. Comm'n,* 630 A.2d 692, 696 (D.C.1993). By addressing only the number of facilities in Ward Six as a whole, the BZA failed to respond with the proper "precision." *Kopff, supra,* 381 A.2d at 1384. Moreover, the BZA did not offer any articulation whatsoever as to why ANC 6C did not "offer persuasive advice under the circumstances." *Levy, supra,* 570 A.2d at 746 (citations and internal quotation marks omitted). Thus, we conclude that the BZA failed to give "great weight" to the views of ANC 6C.[15]

---

15. We reject as unpersuasive ANC 6C's argument that BZA's Finding No. 31 is inadequate. ANC

### B. *ANC 7B's Concerns*

It is undisputed on appeal that the BZA failed to give "great weight" to the written recommendations of ANC 7B. Applicant conceded that point during oral argument, contending only that the BZA was not required to so. See Part II, *supra.*

### IV.

For the foregoing reasons, we reverse the BZA's order granting the applicant a special exception to operate an adult rehabilitation

home and remand the case with directions that the agency reconsider its decision and accord "great weight" to the ANCs' recommendations.

*Reversed and Remanded.*

---

6C argued before the BZA that the application for a special exception should be denied because "the community has had unpleasant experiences with similar type projects in the past." Finding No. 31 states in relevant part:

> No first ha[n]d, specific incidents of unpleasant experiences were described by ANC 6C from which the Board could find that the applicant does not meet the requirements of the sections of the Zoning Regulations under which it seeks relief.

The conclusory nature of ANC 6C's contention, neither elaborated on nor supported by competent testimony or other evidence before the BZA required no further precision than provided by the BZA.