Christopher A. ABRAMS, Appellant,

v.

UNITED STATES, Appellee.

Billy Ray DUNN, Jr., Appellant,

v.

UNITED STATES, Appellee.

Nos. 85–176, 86–647.

District of Columbia Court of Appeals.

No. 85–176: Argued July 8, 1987.
No. 86–647: Submitted July 8, 1987.
Decided Sept. 25, 1987.

---

Scott Howe, Public Defender Service, with whom James Klein, Maureen Cannon, and Ellen Kreitzberg, Public Defender Service, Washington, D.C., were on the brief, for appellant Abrams.

William T. Morrison, Washington, D.C., submitted a brief for appellant Dunn.

Maria E. Cassalia, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell, Mary Incontro, and Helen M. Bollwerk, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before FERREN, TERRY, and STEADMAN, *Associate Judges.*

FERREN, *Associate Judge:*

In these consolidated appeals,[1] Christopher A. Abrams and Billy Ray Dunn, Jr.,

---

1. Appellants were convicted at separate proceed-ings for armed robbery and obstruction of jus-

challenge their sentences imposed under the so-called "mandatory-minimum" provisions of the District of Columbia Code. D.C.Code § 22–3202(a)(1) (1981 & 1987 Supp.).[2] Section 22–3202 (a)(1), as amended in response to a voter initiative effective June 7, 1983,[3] mandates a sentence of not less than five years for anyone convicted of a "crime of violence ... while armed with a pistol or firearm." Appellants present three arguments. First, they contend that, although labeled as a sentencing provision, the mandatory-minimum requirement of § 22–3202(a)(1) creates a new offense that must be alleged, as such, in the indictment —which, they say, was not done here. Second, appellants maintain that the words "while armed with" cannot be applied to aiders and abettors, such as themselves, who did not actually possess a pistol; proof of personal possession is required. Finally, appellants argue that § 22–3202(a)(1) requires proof, which allegedly is lacking here, that the pistol involved was "operable," since operability is a required element of any conviction for carrying a pistol without license. *See* D.C.Code § 22–3204 (1981); *Tucker v. United States*, 421 A.2d 32, 34 (D.C.1980).

We conclude that § 22–3202(a)(1), as amended by the mandatory-minimum provision, does not require proof that an accomplice have actual, personal possession of a pistol or other firearm before he or she can receive the mandatory-minimum of five to fifteen years of imprisonment. We need not decide whether § 22–3202(a)(1) creates a new and thus separately indictable of-

fense or requires proof that the pistol was "operable." Appellants were properly indicted and convicted even if the voter initiative did create a new class of offenses under § 22–3202(a)(1), and appellants have either conceded or waived the operability issue. We therefore affirm appellants' convictions.

### I.

### A.

In a thirteen-count indictment, the government charged Abrams with armed robbery (two counts), D.C.Code §§ 22–2901, –3202 (1981 & 1987 Supp.), carrying a pistol without a license, *id.*, § 22–3204 (1981), and obstruction of justice (ten counts), *id.*, § 22–722(a)(1) (1987 Supp.). The armed robbery counts alleged in relevant part that Abrams had committed the robbery "armed with and having readily available a pistol." Pursuant to a plea bargain with the government, Abrams entered guilty pleas to one count of armed robbery and to one count of obstruction of justice. With respect to the armed robbery charge, Judge Morrison informed Abrams that the government would have to prove that:

> [W]hile you used or had readily available to use a pistol and while acting in concert with other people or you, yourself took property from the actual possession of Diane Russell—the property belonged to Holly Farms—that you took property by force or violence; that you took it with the specific intent to steal it; that you didn't have the right to take it; and that

---

tice (Abrams) and for two counts of armed robbery and for assault with intent to rob while armed (Dunn). Although Abrams' and Dunn's convictions arose from completely unrelated incidents, we granted Dunn's motion to consolidate the appeals because, with respect to sentencing, both cases raise identical legal issues.

2. Dunn also challenges his convictions on the ground that the trial court erroneously denied his motion for judgment of acquittal made at the conclusion of the government's case-in-chief. This claim has no merit. Dunn's failure to renew his initial motion for judgment of acquittal does not foreclose his sufficiency claim but, rather, expands it to cover all the evidence adduced at trial. *Wheeler v. United States*, 494 A.2d 170, 171–72 (D.C.1985). Reviewing the evi-

dence in the light most favorable to the government, and drawing all reasonable inferences in its favor, *see Stack v. United States*, 519 A.2d 147, 159–60 (D.C.1986), we conclude the government presented sufficient evidence that Dunn was aware his companions were committing a robbery and that he participated in it as an aider and abettor.

3. The voters approved the initiative on September 14, 1982, pursuant to which the Council of the District of Columbia enacted the mandatory-minimum provision effective June 7, 1983. *See* District of Columbia Mandatory-Minimum Sentences Initiative of 1981 Delayed Effectiveness Amendments Emergency Act of 1983 (D.C. Act 5–10, March 9, 1983, 30 D.C.Reg. 1226–27).

you carried the property away some distance.

A few minutes later, the judge explained the sentences that would result from such a conviction:

The longest sentence I could give you is a sentence of not less than 15 years nor more than life. If I gave you that sentence, you could not be released until 15 years had passed and that's on the armed robbery charge. *There is an automatic sentence of at least five to 15 years no matter what I want to do. You have got to get that much. Do you understand?*

(Emphasis added). Abrams replied that he understood.

Shortly thereafter, the court asked Abrams to "listen while the prosecutor outlines what her evidence at trial would be." The prosecutor then outlined the government's case against Abrams on the armed robbery charge:

[T]he government's evidence would be that on November 20th at about 11:23 p.m. a woman later identified by the victim entered the Holly Farms at 1335 Rhode Island Avenue, N.E. in the District of Columbia and held Diane Russell, the victim, at gun point. Ms. Bullock got about 12 dollars in that robbery. She went back to the car in which Mr. Abrams was a passenger. The car was stopped within minutes and Ms. Bullock was—well, they were all brought back to the scene and Ms. Bullock was identified by the victim as having been the woman who robbed her.

The court then asked Abrams if what the prosecutor had described was true, and Abrams replied "Yes."

Approximately two and one-half months later, Abrams returned to court for sentencing. At this hearing, the court noted its understanding that the government "was proceeding on the theory that a real weapon was used by Miss Bullock" in the robbery. The prosecutor responded that

the pistol recovered from the car after the robbery had been found to be operable. Defense counsel argued, however, that "[n]ot only didn't [Abrams] use the weapon, but it wasn't also readily available to him." Thus, he claimed, Abrams could not be sentenced under the mandatory-minimum provisions.[4] Counsel conceded, however, that Abrams could properly be considered an aider and abettor of the armed robbery. The court rejected Abrams' claim, ruling that it had no discretion to sentence him to anything other than the mandatory minimum of five to fifteen years in prison for armed robbery.[5]

**B.**

Dunn was charged in a seven-count indictment with armed robbery (three counts), D.C.Code §§ 22–2901, –3202 (1981 & 1987 Supp.), accessory after the fact of armed robbery (three counts), *id.*, § 22–106 (1981), and carrying a pistol without a license, *id.*, § 22–3204 (1981). The armed robbery counts alleged that Dunn had committed the robberies "while armed with and having readily available a pistol." Before trial, the government dismissed the accessory-after-the-fact counts. During the trial, Dunn's codefendant pled guilty to one count of armed robbery (a third codefendant had died before trial). Dunn's convictions resulted from the armed robbery of three persons who were walking through a parking lot in the 1400 block of Clifton Street, N.W. Dunn did not participate actively in the robbery; he remained inside his car with the lights off while his two codefendants alighted and robbed the three victims at gunpoint. After they had taken money from the victims, Dunn's codefendants returned to the car and all three drove away. The police recovered the gun used in the robbery when they apprehended Dunn and the other two men shortly after the robbery. The gun was admitted into evidence. A Metropolitan Police officer testified that he had witnessed a test firing

---

**4.** No written motion setting forth this argument appears in the record.

**5.** The court also sentenced Abrams to ten to thirty months for obstruction of justice, to be served consecutively. Abrams does not challenge this sentence.

of the weapon, which established that it was operable.

At sentencing, Dunn argued that the mandatory-minimum sentence could not be applied to him because he had acted only as an aider and abettor and had not possessed the pistol used in the robbery. The trial court rejected this argument and sentenced Dunn to five to fifteen years in prison on each armed robbery count and to two to six years for assault with intent to rob while armed, all sentences to be served concurrently.

## II.

Appellants primarily contend that the words "while armed with" in § 22–3202(a)(1) must be construed to mean that, before a defendant may be sentenced to the mandatory-minimum term of five years of imprisonment, the government must prove the defendant had actual, personal possession of a pistol or firearm during the commission of the crime.

### A.

Before voter approval of the mandatory-minimum sentencing initiative, *see supra*, note 3, the District of Columbia Code had contained a provision permitting, though not requiring, an enhanced sentence for those who had committed crimes of violence [6] "when armed with or having readily available" a pistol or other dangerous weapon. D.C.Code § 22–3202(a) (1981). This provision read in the relevant part:

(a) Any person who commits a crime of violence in the District of Columbia when armed with or having readily available any pistol or other firearm (or imitation thereof) or other dangerous or deadly weapon (including a sawed-off shotgun, shotgun, machinegun, rifle, dirk, bowie knife, butcher knife, switchblade knife, razor, blackjack, billy, or metallic or other false knuckles):

(1) May, if he is convicted for the 1st time of having so committed a crime of violence in the District of Columbia, be sentenced, in addition to the penalty provided for such crime, to a period of imprisonment which may be up to life imprisonment....

D.C.Code § 22–3202(a)(1) (1981). The voter initiative amended this provision by adding language to sub-section (1) mandating a minimum sentence under certain circumstances. The provision now reads:

(1) May, if he is convicted for the 1st time of having so committed a crime of violence in the District of Columbia, be sentenced, in addition to the penalty provided for such crime, to a period of imprisonment which may be up to life imprisonment *and shall, if convicted of such offenses while armed with a pistol or firearm, be imprisoned for a mandatory-minimum term of not less than 5 years....*

D.C.Code § 22–3202(a)(1) (1987 Supp.) (Amendment emphasized.)

### B.

Even assuming (without deciding) that appellants are correct in their assertion that this amendment to § 22–3202(a)(1) created a new substantive criminal offense, we conclude that their attempts to distinguish this case from the analysis in our recent decision in *Battle v. United States*, 515 A.2d 1120, 1127–28 (D.C.1986), are unpersuasive. In *Battle*, a codefendant, Jose Diaz, was convicted for (among other crimes) aiding and abetting a kidnapping while armed and assault with intent to kidnap while armed. *See* D.C.Code §§ 22–503, –2101 & –3202 (1981 & 1987 Supp.). Diaz apparently was charged and convicted under § 22–3202 before the mandatory-minimum amendment had become effective. In any event, he was sentenced to concurrent terms of twelve years to life pursuant to the enhancement provisions of § 22–3202.

---

**6.** "Crime of violence" is defined in the District of Columbia Code as "any of the following crimes, or an attempt to commit any of the same, namely: Murder, manslaughter, rape, mayhem, maliciously disfiguring another, abduction, kidnapping, burglary, robbery, housebreaking, any assault with intent to kill, commit rape, or robbery, assault with a dangerous weapon, or assault with intent to commit any offense punishable by imprisonment in the penitentiary." D.C.Code § 22–3201(f) (1987 Supp.).

On appeal, he argued that the statute could not be applied to increase the sentence of an aider and abettor who was not himself armed during the offense. The government argued, to the contrary, that because aiders and abettors are liable for the crimes of the principal, *see* D.C.Code § 22–105 (1981), and because nothing in § 22–3202 suggested that this traditional principle, somehow, had become inapplicable, an unarmed aider and abettor who assists a principal convicted under § 22–3202 is also subject to an enhanced sentence. The government argued, alternatively, that because Diaz did in fact have ready access to a gun during the commission of the crimes, one could reasonably infer that the gun was "readily available" to him within the meaning of § 22–3202.[7]

In rejecting Diaz's claim, this court stated:

> Section 22–3202 prescribes increased punishment for one who commits a violent crime while armed or where the person has a firearm "readily available." Diaz's attempt to argue that the enhancement statute applies only to an armed principal offender and not to an aider and abettor who was not armed during the offense is unpersuasive. Under D.C.Code § 22–105 (1981), one who advises, incites, connives at the offense or aids and abets the principal offender in its commission, must be charged as a principal. An individual who aids and abets the commission of a felony is legally responsible for all the acts of the other person which are in furtherance of the common purpose, design or plan to commit the felony, or which are the natural or probable consequence of the act intended.... [Citations omitted.] There is no indication in the D.C.Code, or any case law of this jurisdiction, to suggest that the principles enunciated in section 22–105 do not apply to enhance the sentence of an aider and abettor who assists an armed principal. The purpose for which D.C.Code § 22–3202 was designed—to deter the increasing number of armed crimes within the District— would not be served by imposing lesser sentences on aiders and abettors of armed princip[als]. Accordingly, we conclude that under D.C. Code § 22–3202, Diaz, as an unarmed aider and abettor is subject to sentence enhancement where the principal was armed.

*Battle*, 515 A.2d at 1127–28.

Appellants attempt to distinguish *Battle*. First, they note that *Battle* only dealt with the provision of § 22–3202(a)(1) permitting imposition of a life sentence if one has committed a crime of violence "when armed with or having readily available" a firearm or other dangerous weapon. They then suggest that, by specifically citing this "optional-maximum" provision of the statute, this court necessarily excluded any application of its analysis to the narrower "while armed" language of the distinct mandatory-minimum provision of § 22–3202 (a)(1).

It is true that in *Battle* this court did not specifically address the application of the theory of accomplice liability to the mandatory-minimum provision of § 22–3202(a)(1). We could not have considered this provision because Diaz had been sentenced, instead, under the optional-maximum provision permitting a life sentence. This is not to say, however, that our analysis in *Battle* is not equally applicable here. If the optional-maximum penalty can be applied, as in *Battle*, to an unarmed accomplice, we see no reason why the mandatory-minimum penalty that appears in the very same subsection of the statute could not be applied to the same person. In such a case, as in *Battle*, "[t]here is no indication in the D.C. Code, or any case law of this jurisdiction, to

---

**7.** Diaz also argued that § 22–3202 was merely a sentencing enhancement provision, not a substantive offense in itself. He therefore asserted that the aiding and abetting theory could not be used to increase his sentence, because that theory only applies to one who assists in the commission of a crime. The government did not directly respond to this argument and the court did not specifically address it. Nevertheless, this court's decision necessarily amounted to a rejection of it. Neither appellant in this case has argued that § 22–3202 is merely a sentencing enhancement provision; rather, both appellants contend that § 22–3202 creates a new offense. As we explain, however, we need not resolve this question and express no view on it.

suggest that the principles enunciated in section 22–105 do not apply...." 515 A.2d at 1128.

Second, appellants argue that the court in *Battle* relied on the fact that, as the government suggested, Diaz himself had a weapon "readily available," whereas there is no contention that either Abrams or Dunn had a weapon "readily available." They appear to contend, therefore, that our decision turned on a finding that a pistol was in fact ."readily available" to Diaz, not merely on accomplice liability. Because we were interpreting the words "armed with or having readily available," however, it is not surprising that we quoted the entire provision at issue. More significantly, were appellants correct in arguing that *Battle* turned on a gun's being "readily available" to Diaz, there would have been no need whatsoever for a discussion of accomplice liability; Diaz would have been subject to the optional-maximum regardless of whether he could receive such a sentence through an application of accomplice liability. Finally, apart from one sentence describing § 22–3202 as allowing "increased punishment for one who commits a violent crime while armed or where the person has a firearm 'readily available,'" *id.* at 1127–28, this court did not mention the "readily available" provision. We cannot read our conclusion in *Battle*—that "an unarmed aider and abettor is subject to sentence enhancement where the principal was armed," *id.* at 1128—to mean that an unarmed aider and abettor must, nonetheless, have a weapon readily available before he or she can be subjected to sentence enhancement.[8] The trial court made no finding that Diaz, in fact, had a weapon readily available, and we gave no indication that such a finding was in any way necessary for our decision.

### C.

Appellants also argue that subjecting unarmed aiders and abettors to the mandato-ry-minimum provision would read the words "or having readily available" out of § 22–3202(a), making them merely synonymous with the words "armed with." Appellants begin with the premise that "a statute should not be construed in such a way as to render certain provisions superfluous or insignificant." *Tuten v. United States*, 440 A.2d 1008, 1010 (D.C.1982), *aff'd*, 460 U.S. 660, 103 S.Ct. 1412, 75 L.Ed.2d 359 (1983). They argue that inclusion of the words "or having [a firearm] readily available" in § 22–3202(a), which are clearly applicable to the optional-maximum provision, will have no significance unless their omission from the mandatory-minimum provision is understood to mean that actual possession is required before the mandatory-minimum provision can be applied. Put another way, appellants argue that if actual possession of a pistol or other firearm is not required under the mandatory-minimum provision (which applies to those "armed with" a firearm) then—contrary to its narrower language—the mandatory-minimum provision will not be distinguishable from the reach of the optional-maximum provision that clearly encompasses defendants who merely had a firearm readily available, as well as those who were actually armed.

The government replies that the omission of the words "or having readily available" in the mandatory-minimum provision of § 22–3202(a)(1) has no significance; according to the government, in passing the initiative the voters intended the term "armed with" to be a shorthand expression for "armed with or having readily available."

We find neither argument persuasive. Contrary to the government, we conclude that the omission of the words "or having readily available" from the mandatory-minimum provision does have significance.[9]

---

8. We believe it is more likely that the court used the phrase "armed" as shorthand for the concept "armed with or having readily available." Given that, at the time, there was no indication such a distinction was relevant to its holding, the court's use of this terminology was not surprising.

9. We realize that in prior decisions we have not distinguished between "armed with" and "armed with or having [a firearm] readily available." This case, of course, is the first one since the addition of the mandatory-minimum provision in which this distinction has been raised. Furthermore, before the amendment in 1983, there

But, contrary to appellants' assertions, that significance does not help their cases.

We note, initially, that in interpreting the meaning of the voters initiative,

[t]he manner in which the statute was enacted has no bearing on interpreting the statute. We must hold the legislature and the citizenry to the same standards when interpreting the laws they enact. We must treat amendment by initiative the same as amendment by Council legislation, for once the District voters approve an initiative, it becomes an "act of the Council, ... and thus 'law' through the channel designated for the particular type of act adopted." *Convention Center Referendum Committee v. District of Columbia Board of Elections and Ethics*, 441 A.2d 889, 896–97 (D.C.1981) (en banc) (citations omitted).

*Backman v. United States*, 516 A.2d 923, 926 (D.C.1986) (per curiam). Next, turning to the statute itself, we observe that the mandatory-minimum provision is unquestionably narrower than the optional-maximum provision.

■ First, the category of weapons to which the mandatory-minimum applies is significantly narrower. While the optional-maximum applies to a pistol, other firearm (or imitation thereof), or any dangerous weapon, the mandatory-minimum provision applies only to a pistol or other firearm. The second distinction is, of course, the omission of the language "or having readily available." We agree with appellants that this language reflects a legislative decision to narrow the class of persons who must receive a minimum sentence, in contrast with the class for which the trial court has discretion to impose a life sentence. Thus, to be eligible for a life sentence, a single perpetrator need not have been "armed" but may also be included if he or she merely had a firearm "readily available." In contrast, to receive the man-

datory-minimum sentence, a single perpetrator must actually have been "armed"; it is not enough for this purpose that the defendant had a gun "readily available." This distinction is not meaningless; we can conceive of cases in which the perpetrator is not armed but a gun is readily available. We need not delineate the precise contours of this distinction here, for both Abrams and Dunn concede that the principal in each case was "armed" within the meaning of § 22–3202(a)(1).

■ That a single perpetrator must have been "armed" before he or she can be subjected to the mandatory-minimum sentence, however, does not necessarily lead to the conclusion, urged by appellants, that an accomplice also must have been armed; as we already have explained, we see no reason not to apply accomplice liability in this context just as this court in *Battle* applied accomplice liability in determining eligibility for the life sentence. In short, had appellants' principals not been "armed"— had their principals only had guns "readily available"—appellants could not be given mandatory-minimum sentences under § 22–3202(a)(1). But, because appellants' principals were armed, appellants are subject, as aiders and abettors, to mandatory-minimum sentences.

### III.

Both Abrams and Dunn also contend that the mandatory-minimum sentencing provisions created a new class of offenses, rather than merely enhancing the sentence for an existing offense, and that neither of them has been charged with—and thus cannot be convicted of—this new offense. The government does not question appellants' premise of a new class of offenses but argues, instead, that we need not resolve this issue in either case. We agree with the government that, in light of our rejection of appellants' claim that the mandato-

was no need to address the question, for a finding either of being "armed" or of having a weapon "readily available" was sufficient to subject a defendant to a possible life sentence. Thus, any tendency we may have had to use the term "armed with" as a shorthand expression for "armed with or having readily available" is

of no consequence here. Moreover, we do not believe that we can reasonably infer from our previous practice of not distinguishing between the two concepts any legislative intention on the part of the proponents of the Initiative that the term "armed with" be merely a substitute for "armed with or having readily available."

ry-minimum does not apply to accomplices who are not "armed," and, further, in view of the particular circumstances of each case, we need not decide whether the mandatory-minimum provision of § 22–3202(a)(1) creates a distinct criminal offense. Even if we were to assume so, neither appellant would be entitled to a reversal.

### A.

Abrams contends that while he did plead guilty to the offense of robbery "when armed with or having readily available" a pistol, thus exposing himself to a potential life sentence, he did not plead guilty to the separate offense of robbery "while armed with" a pistol and, therefore, cannot be subjected to the mandatory-minimum term of imprisonment. He also argues that, in any event, the grand jury did not charge that he committed a robbery "while armed with" a pistol and thus that he cannot be convicted of, and punished for, a crime for which he was not indicted. Abrams' claims have no merit.

■ It is true that a defendant may not be convicted of a crime for which he or she has not been indicted. *See United States v. Miller,* 471 U.S. 130, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985). But, even if we assume that robbery "when armed with or having readily available" a pistol and robbery "while armed" are separate crimes, Abrams was not in fact convicted of a crime for which he was not indicted. Each robbery count in the indictment charged Abrams in the conjunctive rather than the disjunctive ("armed with *and* having readily available" a pistol (emphasis added)). Charging one offense in the conjunctive, however, does not mean the government must prove that both acts alleged in the indictment occurred. "The correct method of pleading alternative methods of committing a single crime is to allege the means in the conjunctive." *United States v. Lemire,* 232 U.S.App.D.C. 100, 118, 720 F.2d 1327, 1345 (1983) (citations omitted), *cert.*

*denied,* 467 U.S. 1226, 104 S.Ct. 2678, 81 L.Ed.2d 874 (1984). "[A] conviction follows if the testimony shows the accused to be guilty of any one of the acts charged." *Joyce v. United States,* 147 U.S.App.D.C. 128, 133, 454 F.2d 971, 976 (1971) (footnote omitted), *cert. denied,* 405 U.S. 969, 92 S.Ct. 1188, 31 L.Ed.2d 242 (1972). *See also Martin v. United States,* 435 A.2d 395, 397 (D.C.1981); *United States v. Miqueli,* 349 A.2d 472, 475 (D.C.1975).

■ If we assume, however, that "robbery while armed with a pistol" and robbery "when armed with or having readily available a pistol" constitute separate offenses, Abrams, at most, could advance a claim that the indictment suffered from "duplicity." [10] *See* Super.Ct.Crim.R. 8(a); *United States v. Bradford,* 344 A.2d 208 (D.C.1975); *cf. Ruth v. United States,* 438 A.2d 1256, 1262 (D.C.1981). We have previously defined duplicity as the " 'joining in a single count of two or more distinct and separate offenses.' " *Ruth,* 438 A.2d at 1262 (quoting 1 C. WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 142, at 469 (1982)). "An indictment is duplicitous if it charges in a single count two or more distinct offenses." *Salim v. United States,* 480 A.2d 710, 717 (D.C.1984). Any possible duplicity problem in this case, however, clearly was harmless. *See, e.g., In re C.D.,* 437 A.2d 171, 174–75 (D.C.1981).

A review of what transpired when the trial judge accepted Abrams' plea also makes clear that Abrams indeed pled guilty to being an accomplice to a robbery where the principal was "armed with" a pistol. Although the trial judge described the facts the government would have to prove to show Abrams had been armed or had a pistol readily available, any error was cured by his explicit statement that Abrams was subject to the mandatory-minimum, the prosecutor's description of what the evidence would show, and Abrams' acknowledgment of its accuracy. Abrams' failure to raise any objection during this proceeding further weakens his claim, par-

---

**10.** Neither Abrams nor Dunn has claimed—nor could he—that the indictment did not adequately apprise him of the nature of the charges he was facing. *See United States v. Bradford,* 482 A.2d 430, 433 (D.C.1984).

ticularly in light of the trial judge's explicit statement that Abrams would be subject to the mandatory-minimum sentence. Indeed, even when he did raise an objection at the sentencing hearing, his only claim was that he could not be subjected to the optional-maximum as an unarmed aider and abettor; he did not claim that, if the court rejected this argument, he could not be subjected to the mandatory-minimum sentence because he had neither been charged with robbery "while armed" nor pled guilty to that offense.

**B.**

Dunn, too, claims that he cannot be punished for a crime for which he was not convicted. Dunn was indicted in precisely the same manner as Abrams, and, likewise, any possible problem of duplicity was harmless. Furthermore, even assuming the judge erred in instructing the jury that Dunn could be convicted as an aider and abettor if the principal had been "armed with or had readily available a pistol," any such error was clearly harmless beyond a reasonable doubt. *See Henderson v. United States,* 527 A.2d 1262, 1264–67 (D.C. 1987); *see also Rose v. Clark,* — U.S. —, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986); *Sandstrom v. Montana,* 442 U.S. 510 (1979). The government presented overwhelming and uncontradicted evidence that a robbery had been committed by men "armed with" a pistol, not merely having one "readily available."

**IV.**

Appellants also argue that, regardless of our disposition of their other claims, § 22–3202(a)(1) requires the government to prove that the pistol used in the robbery was "operable." We need not reach this issue and express no views on it. At oral argument, Abrams conceded that the government could prove that the pistol used in the robbery was operable and that he did not desire a remand merely to compel the government to put forward this evidence. Dunn explicitly waived at trial any claim he may have had in this regard. At the close of jury instructions, the prosecutor inquired whether the court had given an instruction that pistol means a "firearm that works." He explained that he believed operability was a prerequisite to imposition of the mandatory-minimum sentence. The court offered to give an instruction that the jury must find the pistol operable, but Dunn's counsel explicitly declined to request the court to give such an instruction.[11]

*Affirmed; remanded for resentencing.*[12]

---

11. The colloquy between the court and Defense counsel was as follows:

THE COURT: Do you want me to make that clear, that they must find also that—for the armed?

[DEFENSE COUNSEL]: We have no request in that regard.

THE COURT: You don't want it?

[DEFENSE COUNSEL]: I'm not making any request.

\* \* \* \* \* \*

THE COURT: Then I think I will leave it.

12. The government draws our attention to the fact that the trial court sentenced Dunn to a concurrent term of two to six years on his conviction for assault with intent to commit robbery while armed. Because this crime is a crime of violence, *see* D.C.Code § 22–3201(f) (1987 Supp.), Dunn is subject to the mandatory-minimum provision of § 22–3202(a)(1). Accordingly, we remand Dunn's case to the trial court for resentencing on his conviction for assault with intent to commit robbery while armed.