Robert Lee PARRISH, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 97–CO–828.

District of Columbia Court of Appeals.

Argued June 2, 1998.

Decided Sept. 10, 1998.

Webster T. Knight, Washington, DC, for appellant.

Rosalyn Calbert Groce, Assistant Corporation Counsel, with whom Jo Anne Robinson, Interim Corporation Counsel, and Robert R. Rigsby, Deputy Corporation Counsel, were on the brief, for appellee.

Before TERRY, SCHWELB, and FARRELL, Associate Judges.

TERRY, Associate Judge.

On April 15, 1997, appellant Parrish pleaded guilty to a charge of drinking in public.[1] He was sentenced to thirty days in jail and was ordered to pay $50 to the Crime Victims' Compensation Fund. His sole contention on appeal is that the trial court erred in imposing the $50 assessment. He offers two alternative arguments. First, he maintains that the Victims of Violent Crime Compensation Act of 1996 does not apply to persons convicted of non-serious misdemeanors, such as drinking in public; second, he asserts that judges may waive its provisions and in the past have done so. We reject both arguments and affirm the $50 assessment.

I

The Victims of Violent Crime Compensation Act of 1981 ("the 1981 Act"), D.C.Code §§ 3–401 through 3–415 (1994), created a compensation program for victims of violent crime in the District of Columbia.[2] The pro-

---

1. D.C.Code § 25–128(a) (1996).

2. The 1981 Act was amended, but not substantially changed, by the Victims of Violent Crime

gram's resources were entrusted to the Crime Victims' Compensation Fund ("CVCF"), at that time administered by the Mayor through his designee, the Department of Employment Services ("DOES"). The CVCF was funded primarily by assessments on persons convicted of crimes in the District of Columbia. In particular, D.C.Code § 3–414 (1994) provided in part:

> In addition to and separate from any punishment imposed, a cost of at least $20 and not more than $500 for each felony charge, and a cost of $10 for each misdemeanor charge, shall be imposed upon each person convicted of or pleading guilty or nolo contendere to such charge in the Superior Court of the District of Columbia ("Court"). The amount of costs assessed under this section for felonies shall be determined by the courts on the basis of the estimated severity of the injury or loss caused by the crime. The decision of the Court regarding costs shall be final.... All such costs shall be payable to the District of Columbia Treasurer for deposit to the credit of the Crime Victims' Compensation Fund.

The 1981 Act did not contain any language allowing judges to waive its apparently mandatory assessments. However, "[s]ome of the judges at the D.C. Superior Court admitted that they were skeptical of the program and whether money was actually reaching the many victims who needed it. As a result, many judges did not consistently impose or collect the applicable fines needed to fund the program." COUNCIL OF THE DISTRICT OF COLUMBIA, REPORT ON BILL 11–657, THE "VICTIMS OF VIOLENT CRIME COMPENSATION ACT OF 1981

AMENDMENT ACT OF 1996," at 3 (September 26, 1996) (hereinafter REPORT).

After DOES suspended the program on July 5, 1996, for lack of funding,[3] the Council passed the Victims of Violent Crime Compensation Emergency Act of 1996, which temporarily repealed D.C.Code §§ 3–401 through 3–415.[4] Shortly thereafter, the Victims of Violent Crime Compensation Act of 1996 ("VVCCA" or "the 1996 Act") was enacted, permanently repealing sections 3–401 through 3–415 and creating a new system for compensating crime victims. That statute became effective on April 9, 1997,[5] and is codified at D.C.Code §§ 3–421 through 3–438 (1998 Supp.).

The general purpose behind the 1996 Act was to redesign the program so that it would be more effective in compensating crime victims. First, the new statute removed operational responsibility from the Mayor and placed it in the Superior Court. D.C.Code § 3–423 (1998 Supp.). Second, it made certain administrative changes designed to protect more effectively the rights of crime victims, including, *inter alia*, increasing the maximum amount payable to victims, creating a Crime Victims Compensation Appeals Board, and lengthening the time limit for filing a claim. REPORT at 5. Finally, the 1996 Act increased the assessments imposed on persons convicted of crimes.[6] · On December 12, 1996, William Erhardt, Director of the Legal Assistance Branch of the Superior Court, sent a memorandum to all Superior Court judges and hearing commissioners outlining the new schedule of assessments. Mr. Erhardt specifically advised judges and com-

---

Compensation Act of 1981 Conforming Amendments Act of 1990.

3. DOES had run the program since its inception in 1981. Although the agency said that the suspension of the program was due to a budget crisis, there were other problems with it as well, such as "lack of formal protocols for processing applications, burdensome and often humiliating demands for documentation, unduly lengthy processing of applications, excessive number of claims denied, and lack of outreach to certain victim populations in the District." REPORT at 3.

4. During the period between the temporary repeal of the 1981 Act and the effective date of its 1996 replacement, the Department of Human

Services had jurisdiction over the program. REPORT at 3.

5. The offense to which appellant pleaded guilty occurred on April 14, 1997.

6. The Committee Report stated that the program's past fiscal problems stemmed mainly from the fact that its payment of compensation to victims was made from the District's general fund rather than from fines paid by convicted persons. The Report pointed out that "the majority of states fund their programs almost entirely from fines imposed on criminals, reflecting the penological goal that criminals should pay for victims' losses." REPORT at 3.

missioners that the assessments were not waivable, noting that "[t]here are provisions under the new legislation and elsewhere for collection of assessments from defendants who are sentenced to terms of incarceration while they are serving their sentences and after release on parole."

## II

■ D.C.Code § 3–436 (1998 Supp.), the statute at issue in this case, provides in part:

(a) In addition to and separate from punishment imposed, an assessment of $100 for each violation of § 40–716, an assessment of between $50 and $250 for other serious traffic or misdemeanor offenses, and an assessment of between $100 and $5,000 for each felony offense shall be imposed upon each person convicted of or pleading guilty or nolo contendere to the offense in the Superior Court of the District of Columbia.... The decision of the sentencing court regarding assessments is final....

(b) The probation office of the Court shall monitor collection of assessments levied against defendants released on probation....

(c) Assessments under this chapter shall be collected as fines. Failure to pay assessments as ordered by the Court will subject a defendant so ordered to sanctions provided pursuant to § 16–706.

Thus the VVCCA establishes three levels of assessments: (1) $100 for each violation of section 40–716, (2) between $50 and $250 for "other serious traffic or misdemeanor offenses," and (3) between $100 and $5,000 for each felony offense. Appellant contends that the trial court erred in imposing on him a VVCCA assessment because he was convicted of a non-serious misdemeanor, and the language of the statute indicates that such an assessment is only to be imposed on persons convicted of serious misdemeanors. The question before us, then, is whether the language "other serious traffic or misdemeanor offenses" in section 3–436(a) means that the assessment applies to only "serious" misdemeanors or to all misdemeanors. We construe the word "serious" as modifying only the word "traffic" and therefore hold that an

assessment of $50 to $250 must be imposed for all misdemeanor offenses.

From the structure and syntax of the statute, we draw two conclusions. First, we conclude that the words "other serious" in front of "traffic" operate in tandem and relate back to the preceding phrase, which mandates a $100 assessment for a violation of D.C.Code § 40–716. That section proscribes two serious traffic offenses, driving under the influence of alcohol or drugs and fleeing from the scene of an accident. It is a basic principle of statutory construction that the words of a statute "should be construed according to their ordinary sense and with the meaning commonly attributed to them." *Davis v. United States,* 397 A.2d 951, 956 (D.C.1979) (citation omitted); *accord, e.g., Peoples Drug Stores, Inc. v. District of Columbia,* 470 A.2d 751, 753 (D.C.1983) (en banc). With this principle in mind, a common-sense reading of section 3–436(a) persuades us that the phrase "other serious" differentiates between violations of D.C.Code § 40–716, which merit a specified assessment ($100) under the VVCCA, and all "serious" traffic offenses which are not covered by section 40–716. "Other" is defined as "being the one or ones distinct from that or those first mentioned or implied." WEBSTER'S NEW COLLEGIATE DICTIONARY 835 (9th ed.1989). Given this definition, we read the words "other serious" as referring to "serious" traffic offenses not mentioned in D.C.Code § 40–716.

■ Second, we conclude that "other" and "serious" both modify only "traffic ... offenses." The word "or", which separates "traffic" from "misdemeanor", is normally disjunctive and establishes a relationship of contrast. *See Scott v. United States,* 672 A.2d 579, 581 (D.C.1996) (citing cases); *Colbert v. United States,* 601 A.2d 603, 608–609 (D.C.1992); *Abrams v. United States,* 531 A.2d 964, 972 (D.C.1987). "The use of the disjunctive conjunction 'or', to join the alternatives, indicates that they are mutually exclusive." *Charles E. Smith Management, Inc. v. District of Columbia Rental Housing Comm'n,* 492 A.2d 875, 878 (D.C.1985). We think the most reasonable way to read the phrase "other serious traffic or misdemeanor offenses" is to construe it as setting up two

categories: "traffic" offenses and "misdemeanor" offenses. Since we have already concluded that "other serious" refers only to the first category ("traffic" offenses), it follows that "serious" does not include the second category ("misdemeanor" offenses). We hold accordingly that the $50–to–$250 assessment applies to all misdemeanors, including the one of which appellant was convicted.

## III

■ We turn to appellant's alternative argument that assessments under the VVCCA may be waived by trial judges.[7] He asserts that because trial judges in the past waived assessments under the VVCCA's predecessor (the 1981 Act), judges have discretion under the current statute to do likewise. We disagree.

■ At the outset we look to the statutory language. "If the meaning of the statute is plain on its face, resort to legislative history or other extrinsic aids to assist in its interpretation is not necessary." *United States v. Young*, 376 A.2d 809, 813 (D.C. 1977); *see also Burgess v. United States*, 681 A.2d 1090, 1095 (D.C.1996); *Citizens Ass'n of Georgetown v. District of Columbia Board of Zoning Adjustment*, 642 A.2d 125, 128 (D.C. 1994). In this case there is no ambiguity at all in the statutory language, which clearly states that the applicable assessments "shall" be imposed. It is well established that the word "shall" is "a term which creates a duty, not an option." *Riggs National Bank v. District of Columbia*, 581 A.2d 1229, 1257 (D.C.1990) (citations omitted); *accord, In re O.M.*, 565 A.2d 573, 582 (D.C.1989), *cert. denied*, 494 U.S. 1086, 110 S.Ct. 1824, 108 L.Ed.2d 953 (1990); *Dupont Circle Citizens Ass'n v. District of Columbia Board of Zoning Adjustment*, 530 A.2d 1163, 1170 (D.C. 1987); *Smith v. D.C. Rental Accommodations Comm'n*, 411 A.2d 612, 615 (D.C.1980). Because the plain language of the statute imposes a duty on trial judges to assess appropriate sums on persons convicted of crimes, we hold that the assessments may not be waived.

Even if we were to consider the practice of the courts since the victims' compensation program was set up, we would still find appellant's argument unpersuasive because it relies solely on the fact that some judges waived assessments under the 1981 Act, the predecessor of the current VVCCA.[8] Whether the old law was waived or even, for that matter, waivable is irrelevant to whether the current statute may be waived. Moreover, the legislative history of the 1996 Act supports the view that the Council did not intend its provisions to be waivable. One of the purposes of the 1996 Act was to increase the assessments imposed on persons convicted of crimes so that the CVCF would be predominantly funded by such payments. REPORT at 3. Allowing judges to waive the assessments would be patently inconsistent with the Council's explicit intention to collect more money to run the program. We therefore hold that assessments under D.C.Code § 3–436(a) are mandatory and cannot be waived.

## IV

The order directing appellant to pay $50 to the Crime Victims' Compensation Fund is accordingly

*Affirmed.*

---

7. At his sentencing, appellant asked the trial court to waive his assessment under D.C.Code § 3–436. Because the court was not sure whether it had the authority to do so, it imposed the assessment but stayed the payment of it pending the outcome of this appeal.

8. We note that the language of the 1981 Act does not support the inference that it was waivable.