*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 22-CO-0662

EMERO S. TORNERO, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court of the
District of Columbia
(2009-CF3-006534)

(Hon. Jennifer M. Anderson, Trial Judge)

(Argued December 14, 2023                    Decided May 15, 2025)

*Thomas G. Burgess* for appellant.

*Kevin Birney*, Assistant United States Attorney, with whom *Matthew M. Graves*, United States Attorney at the time, and *Chrisellen R. Kolb* and *John P. Mannarino*, Assistant United States Attorneys, were on the brief for appellee.

Before BLACKBURNE-RIGSBY, *Chief Judge*, and HOWARD and SHANKER, *Associate Judges*.

BLACKBURNE-RIGSBY, *Chief Judge*: This appeal comes to us following Emero Tornero's challenge to his sentence arising from various crimes of violence committed against taxi drivers operating in the District of Columbia. Mr. Tornero contends that the trial court imposed an illegal sentence when it ordered him to pay

assessments pursuant to the Victims of Violent Crime Compensation Act (VVCCA).

According to Mr. Tornero, these assessments constitute impermissible fines. For the

reasons discussed below, we disagree and affirm the trial court.

## I.    Factual and Procedural Background

In 2008, Mr. Tornero, a cab driver, committed a series of attacks against four

other cab drivers who were operating in the District of Columbia. *Tornero v. United

States*, 94 A.3d 1, 4 (D.C. 2014).[1] He was arrested in March 2009, *id.* at 5, and, on

June 4, 2011, a jury found him guilty on thirteen counts:

- Count 1: Assault with a Deadly Weapon (ADW) (Car) of a Senior Citizen;

---

[1] On January 27, 2008, Mr. Tornero punctured the tires of Mr. Dowlatshahi's cab. *Id.* at 4. Mr. Tornero also drove his taxi at Mr. Dowlatshahi while he was inspecting the damage, although he failed to strike him. *Id.* On February 9, 2008, Mr. Tornero cut and deflated the rear tires of Mr. Weldegerish's cab before brandishing a knife at Mr. Weldegerish's mid-section. *Id.* Mr. Tornero encountered Mr. Weldergerish again on April 20, 2008, when he rammed his taxi into the rear of Mr. Weldergerish's cab. *Id.* When Mr. Weldergerish stepped out to inspect the damage to his vehicle, Mr. Tornero struck him in the thighs from behind with his taxi before driving off. *Id.* On June 1, 2008, Mr. Tornero deflated the passenger-side tires of Mr. Jean's cab. *Id.* While Mr. Jean was inspecting the damage, Mr. Tornero slashed the driver-side tires of Mr. Jean's vehicle and, after a brief departure, drove his taxi at Mr. Jean, who only avoided being struck by jumping onto a parked car. *Id.* On July 27, 2008, the rear windshield of Mr. Ladane's cab shattered while the vehicle was stopped at an intersection. *Id.* at 5. Mr. Ladane turned around to see Mr. Tornero's arm hanging out the window of a nearby taxi, which quickly sped away from the scene. *Id.* Then, on August 16, 2008, Mr. Tornero drove his taxi into the driver's door of Mr. Ladane's cab three times. *Id.*

- Count 2: Aggravated Assault While Armed (AAWA) of a Senior Citizen with Aggravating Circumstances;
- Count 3: Misdemeanor Destruction of Property (DP);
- Count 4: ADW (Knife) with Aggravating Circumstances;
- Count 5: Carrying a Dangerous Weapon (CDW) Outside Home/Business;
- Count 6: Misdemeanor DP;
- Count 10: ADW (Car) with Aggravating Circumstances;
- Count 11: CDW (Knife);
- Count 12: Felony DP (Over $200);
- Count 13: Felony DP;
- Count 14: ADW (Car) with Aggravating Circumstances;
- Count 15: Felon DP; and
- Count 17: Fleeing a Law Enforcement Officer

On November 30, 2011, Mr. Tornero was sentenced to an aggregate sentence of 290 months of imprisonment.[2] The trial court also imposed a total of $1,000 in VVCCA assessments, including three $100 assessments for Counts 4, 10, and 14.

Thereafter, Mr. Tornero appealed to this court, alleging (1) that the trial court abused its discretion by (a) declining to correct its statement to the jury that defense counsel made an improper representation during closing and refusing to instruct the jury to restart deliberations after reopening closing arguments, *id.* at 9; (b) denying his severance motion on the grounds of mutual admissibility to prove identity, *id.* at 10-11; and (c) admitting into evidence a BB gun discovered during his arrest, *id.* at

---

[2] Mr. Tornero was sentenced to 114 months for Count 2; fifty-four months each for Counts 4, 10, and 14; and fourteen months for Count 17. Mr. Tornero was also sentenced to fourteen months for Counts 1, 3, 5, 11, 12, 13, and 15, and 180 days for Count 6, all to run concurrently.

14; (2) that the trial court erred when it imposed a fourteen-month sentence for his misdemeanor DP conviction, *id.* at 15; and (3) that his ADW and AAWA convictions arising from the January 27, 2008, incident should merge. *Id.* In ruling on Mr. Tornero's appeal, we held that his first two claims were without merit but agreed that admission of the BB gun constituted reversible error. *Id.* at 4. We also held that the trial court erred in its sentencing on Count 3 and that Mr. Tornero's convictions for Counts 1 and 13 merge. *Id.* After we remanded the case, *id.*, the trial court resentenced Mr. Tornero to 180 days for his misdemeanor DP conviction and vacated the convictions for felony DP and ADW of a senior citizen. Because the sentences for these three offenses ran concurrently with the other sentences, Mr. Tornero's total term of imprisonment did not change.

On January 13, 2022, Mr. Tornero filed a pro se motion in the trial court alleging that (1) his convictions for Counts 1, 2, and 3 should be dismissed because he never met nor saw the alleged victim—Mr. Dowlatshahi—prior to trial; (2) his convictions related to Mr. Dowlatshahi were illegal because "Mr. Dowlatshahi's identification of him was less than 100% sure"; (3) the government failed to present expert testimony concerning vehicle collisions, tire tread marks, and crash scene reenactment, and the expert witness the government did put on the stand "deceived the jury"; (4) the convictions relating to Mr. Dowlatshahi were illegal "because Mr. Dowlatshahi was never hit by any vehicle"; and (5) "the government committed

'malicious malpractice' by prosecuting him because Mr. Dowlatshahi was never hit by any vehicle." The trial court construed this as a motion to vacate Mr. Tornero's convictions under D.C. Code § 23-110. On August 10, 2022, the trial court denied the motion as procedurally barred because Mr. Tornero failed to raise his challenges on direct appeal and did not allege or show cause for his failure to do so.

Mr. Tornero timely appealed the denial of his motion.

## II.    Discussion

On appeal, Mr. Tornero presents a novel issue, arguing that the VVCCA assessments for his three ADW offenses are illegal because the statute under which he was sentenced did not provide for imposing fines as a punishment. As a threshold matter, we note that Mr. Tornero did not challenge the legality of the assessments prior to this appeal. "[A]rguments not raised in the trial court 'are normally spurned on appeal.'" *Rayner v. Yale Steam Laundry Condo. Assoc.*, 289 A.3d 387, 399 n.31 (D.C. 2023) (quoting *Crockett v. Deutsche Bank Nat'l Tr.*, 16 A.3d 949, 953 (D.C. 2011)). An illegal sentence, however, may be corrected at any time. Super. Ct. Crim. R. 35(a); *see also Jordan v. United States*, 235 A.3d 808, 814 (D.C. 2020) ("Rule 35(a) permits the trial court to 'correct an illegal sentence at any time,' and we have long held that the trial court is authorized to bring an illegal sentence into conformity with the law." (quoting Super. Ct. Crim. R. 35(a)). The government

agrees with this view of the law. Accordingly, Mr. Tornero's argument is properly before us.

Our analysis now moves to Mr. Tornero's argument that his sentence is illegal. A sentence is illegal if it does not comport with the pertinent laws in place at the time the offense was committed. *See, e.g.*, *Jones v. United States*, 127 A.3d 1173, 1197-98 (D.C. 2015) (holding twelve-year prison sentence illegal when statutory maximum sentence at time of offense was ten-year prison term). Accordingly, our inquiry is twofold: (1) whether the statutes at issue authorize the imposition of a fine as a punishment for the crime and, if they do, (2) whether a VVCCA assessment constitutes a fine. Both analyses are a matter of statutory interpretation.

We review issues of statutory interpretation de novo. *District of Columbia v. Bryant*, 307 A.3d 443, 450 (D.C. 2024). When interpreting a statute, we begin with its plain language to determine if it is unambiguous. *Williams v. United States*, 314 A.3d 1158, 1195 (D.C. 2024). "Our role is 'to ascertain and give effect to legislative intent and to give legislative words their natural meaning.'" *United States v. Hawkins*, 261 A.3d 914, 917 (D.C. 2021) (quoting *Lopez-Ramirez v. United States*, 171 A.3d 169, 172 (D.C. 2017)). "This is a 'holistic endeavor,' in which we look not at 'words in isolation . . . but [at their] placement and purpose in the statutory

scheme.'" *Id.* (alteration in original) (quoting *Off. of the People's Couns. v. Pub. Serv. Comm'n*, 163 A.3d 735, 740 (D.C. 2017)). "'We may also look to the legislative history to ensure that our interpretation is consistent with legislative intent.'" *In re Settles*, 218 A.3d 235, 238 (D.C. 2019) (quoting *Williams v. Kennedy*, 211 A.3d 1108, 1110 (D.C. 2019)). "In interpreting a statute, we are bound by the holdings of our prior decisions interpreting the statute." *Id.*

Mr. Tornero argues that the trial court's imposition of $100 assessments was illegal because the statutory provision governing AWD at the time of his offenses did not provide for fines. All of Mr. Tornero's offenses were alleged to have been committed in 2008. *See Tornero*, 94 A.3d at 3 n.1. At that time, the applicable statute provided the following punishment for assault with intent to commit mayhem or with a dangerous weapon: "Every person convicted of an assault with intent to commit mayhem, or of an assault with a dangerous weapon, shall be sentenced to imprisonment for not more than 10 years." D.C. Code § 22-402 (2008). Manifestly, a fine imposed pursuant to Section 22-402 would have been illegal because that provision did not provide for such a penalty. The assessments at issue in this case, however, were made pursuant to the VVCCA, not Section 22-402. We thus focus our analysis on the VVCCA.

We have previously assessed the relevant text of the VVCCA, which reads as follows:

> In addition to and separate from punishment imposed, an assessment of $100 for each violation of the following crimes, an assessment of between $50 and $250 for other serious traffic or misdemeanor offenses, and an assessment of between $100 and $5,000 for each felony offense shall be imposed upon each person convicted of or pleading guilty or nolo contendere to the offense . . . .

D.C. Code § 4-516(a).  In *Lopez-Ramirez v. United States*, we analyzed whether VVCCA assessments constituted fines for purposes of determining a criminal defendant's right to a jury trial under D.C. Code § 16-705(b)(1)(B).  171 A.3d 169.  There, we reasoned that the use of "assessment" as opposed to "fine," and the directive to impose the assessments "[i]n addition to and separate from [the] punishment imposed," D.C. Code § 4-516(a), "suggest[ed] that the Council did not consider VVCCA assessments to be punishments in the same way" as a fine.  *Lopez-Ramirez*, 171 A.3d at 173.  We further observed that the statute's command that assessments "shall be collected as fines," D.C. Code § 4-516(c), "would be unnecessary if the Council otherwise equated 'assessments' with 'fines.'"  *Lopez-Ramirez*, 171 A.3d at 173; *see also Lee v. United States*, 276 A.3d 12, 18 (D.C. 2022) (stating that canons of statutory construction "'require us to avoid conclusions that effectively read language out of a statute whenever a reasonable interpretation is available that can give meaning to each word in the statute'" (quoting *School St.*

*Assocs. Ltd. P'Ship v. District of Columbia*, 764 A.2d 798, 807 (D.C. 2001))). We also analyzed the VVCCA's text in dicta in *Gotay v. United States*, noting that the statute does not refer to the assessments as fines and that "fines are generally prescribed in the statutes that define particular crimes and establish the penalties for them." 805 A.2d 944, 947 n.9 (D.C. 2002). It must be said that *Lopez-Ramirez* and *Gotay* assessed the VVCCA in contexts that differ from that in the instant case. Consequently, we are not strictly bound by those cases here. Nonetheless, the interpretations of the VVCCA in *Lopez-Ramirez* and *Gotay* provide strong support for not construing assessments under the VVCCA as fines.

This plain text reading of the statute is bolstered by the legislative history of the statutory scheme. In 2013, the Council amended the language of Section 22-402 to include the following: "In addition to any other penalty provided under this section, a person may be fined an amount not more than the amount set forth in [Section] 22-3571.01."[3] D.C. Code § 22-402 (2013). The Council's objective in enacting the 2013 reforms was to create "a more clear and consistent penalty structure in the District." Committee Report, Report on Bill No. 19-214 before the

---

[3] Section 22-3571.01 provides that "[n]otwithstanding any other provisions of the law . . . a defendant who has been found guilty of an offense under the District of Columbia Official Code punishable by imprisonment may be sentenced to pay a fine as provided" therein. D.C. Code § 22-3571.01(a). The provision also enumerates the size of the fine to be levied depending upon the term of imprisonment the defendant is eligible for. *Id.* at § 22-3571.01(b).

Committee on the Judiciary, Council of the District of Columbia at 1 (Oct. 9, 2012) (2012 Committee Report). If the Council viewed VVCCA assessments as fines, it could have cross-referenced those assessments in the amended version of Section 22-402. But it did not; the fine provision associated with Section 22-402 and the VVCCA assessment scheme remain separate and apart. This suggests that VVCCA assessments fall into a different category than fines.[4]

Practically speaking, both fines and VVCCA assessments are utilized to fund the Crime Victim's Compensation Program (the Program). *See* 2012 Committee Report at 58 (criminal fines "are approximately ten percent of the resources" for the

---

[4] In a report on the 2023 amendments to the VVCAA, the Committee on the Judiciary and Public Safety indicated that assessments under the statute "are formally considered 'fines.'" Committee Report, Report on Bill No. 24-75 before the Committee on the Judiciary and Public Safety, Council of the District of Columbia at 7 (Sept. 16, 2022). This does not alter our analysis. First, this statement pertained to an amendment which occurred after Mr. Tornero's sentencing, meaning he was not sentenced under the amended scheme. Second, the amended statute uses the word "assessment," commands courts to impose the assessment "[i]n addition to and separate from punishment imposed," and directs the assessment to be "collected as fines." D.C. Code § 4-516(a)-(b) (2023). "[T]he primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that [the lawmaker] has used [in the statute]." *Booz Allen Hamilton Inc. v. Off. of Tax & Revenue*, 308 A.3d 1205, 1210 (D.C. 2024) (second alteration in original) (quoting *Varela v. Hi-Lo Powered Stirrups, Inc.*, 424 A.2d 61, 64 (D.C. 1980) (en banc)); *see also Johnson v. D.C. Dep't of Emp. Servs.*, 111 A.3d 9, 10 (D.C. 2015) ("If the meaning of the statute is plain on its face, resort to legislative history or other extrinsic aids to assist in its interpretation is not necessary." (quoting *Parrish v. District of Columbia*, 718 A.2d 133, 136 (D.C. 1998))). Accordingly, the language in this committee report does not alter our analysis.

Program (footnote omitted)); D.C. Code § 4-515(c) (indicating the Crime Victims Compensation Fund (the CVC Fund), which is administered under the Program, is funded by, inter alia, assessments collected pursuant to Section 4-515 and "any other fines, fees, penalties, or assessments").[5]  Failure to pay both fines and VVCCA assessments may result in imprisonment.  *See* D.C. Code § 16-706 (allowing imprisonment of up to one year as punishment for failure to pay fines); *see also id.* at § 4-516(c) (indicating failure to pay VVCCA assessments may result in sanctions pursuant to Section 16-706).  However, the imposition of fines is discretionary, *id.* at § 22-3571.01(a) (a defendant found guilty of an offense "punishable by imprisonment *may* be sentenced to pay a fine" (emphasis added)), while VVCCA assessments are mandatory.  *Id.* at § 4-516(a)(1) (VVCCA assessments "*shall* be imposed" (emphasis added)).  Furthermore, fines are designed to be proportionate to the seriousness of the convicted offense "to ensure that the fines associated with various offenses are equitable [and to] ensure that the monetary penalty associated with a given offense is appropriate."  2012 Committee Report at 4.  This indicates that fines are imposed as a form of punishment as they relate directly to the crime committed.  In contrast, VVCCA assessments are explicitly *not* punishments, *see*

---

[5] The CVC Fund is used to directly compensate crime victims and fund the Crime Victims Assistance Fund, which is used "for outreach activities to increase the number of crime victims who apply for" compensation.  D.C. Code § 4-515(d)(1)-(2).

D.C. Code § 4-516(a)(1) (VVCCA assessments are collected "[i]n addition to and *separate from* punishment imposed."), and primarily serve to fund the Program. *See* Committee Report, Report on Bill No. 24-75 before the Committee on the Judiciary and Public Safety, Council of the District of Columbia at 7 (Sept. 16, 2022) (VVCCA assessments are collected "[t]o generate revenue and maintain the [CVC Fund]"). While there may be practical similarities between fines and assessments, the key differences between the two measures show that they are separate instruments.

In light of the foregoing analysis, we hold that VVCCA assessments do not constitute fines for purposes of sentencing. Accordingly, the trial court did not impose an illegal sentence when it imposed VVCCA assessments on Mr. Tornero for ADW offenses arising under a statute that did not provide for fines.

Our holding is confirmed by separate language in the VVCCA that makes clear that an illegal sentence would arise if the trial court had *not* imposed the assessments. This court has previously held that "the plain language of the [VVCCA] imposes a duty on trial judges to assess appropriate sums on persons convicted of crimes," and that such duty "may not be waived." *Parrish v. District of Columbia*, 718 A.2d 133, 136 (D.C. 1998); *see also Gotay*, 805 A.2d at 948 (holding courts are "not only authorized but required to impose an assessment" pursuant to the VVCCA when a defendant pleads guilty to an offense covered by the

VVCCA).  In *Parrish*, we observed that "[o]ne of the purposes of the 1996 Act was to increase the assessments imposed on persons convicted of crimes so that the [CVC Fund] would be predominantly funded by such payments."  718 A.2d at 136 (citing Committee Report, Report on Bill No. 11-657 before the Committee on the Judiciary, Council of the District of Columbia (Sept. 26, 1996)).  We reasoned that "[a]llowing judges to waive the assessments would be patently inconsistent with the Council's explicit intention to collect more money to run the program."  *Id.* Consequently, it would be illegal for a trial court to not impose such assessments when mandated by statute.  Here, imposition of the mandatory VVCCA assessments did not and could not result in an illegal sentence.  Accordingly, we hold that Mr. Tornero's sentence is legal.

### III.   Conclusion

For the foregoing reasons, we affirm Mr. Tornero's sentence.

*So ordered.*